**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Marilyn Kelly    Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 31, 2009

BRIAN POTTER,

      Plaintiff-Appellant,

v                  No. 136336

RICHARD C. McLEARY, M.D., GARY
AUGUSTYN, M.D., ST. JOSEPH MERCY
HOSPITAL ANN ARBOR, d/b/a TRINITY
HEALTH-MICHIGAN, ROBERT
DOMEIER, D.O., and EMERGENCY
PHYSICIANS MEDICAL GROUP, P.C.,

      Defendants,

and

KRISTYN H. MURRY, M.D., and HURON
VALLEY RADIOLOGY, P.C.,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

At issue before this Court is the proper interpretation of the statutory

provision requiring a notice of intent to sue (NOI) in medical malpractice actions.[1]

---

[1] MCL 600.2912b.

This case raises the issue whether a professional corporation (PC) must be provided an NOI before the commencement of the medical malpractice action. It also raises the issue of what statements must be set forth in an NOI to satisfy the requirements of MCL 691.2912b(4) when a claim being made against the PC is based solely on a PC's vicarious liability for its physician.

We hold, on the basis of the plain language of the relevant statutes, that when claims alleged against a PC are predicated on its vicarious liability for a licensed health care provider rendering professional services, an NOI must be provided. The NOI provision, MCL 600.2912b, clearly states that a plaintiff must provide all health professionals and health facilities an NOI before commencing a medical malpractice action. MCL 600.5838a delineates those health care providers and facilities against which claims of medical malpractice may be asserted.[2] Claims asserted against providers and facilities not delineated in § 5838a sound in ordinary negligence.[3] Because § 5838a specifically refers to PCs in its definitional section, a claim against a PC sounds in malpractice, but only when the claim asserted against the PC is for rendering professional services as defined in MCL 450.225. Under these circumstances, a PC must be provided an

[2] *Kuznar v Raksha Corp*, 481 Mich 169, 177; 750 NW2d 121 (2008).

[3] See *id*. at 172.

NOI.[4]  The claim against Huron Valley Radiology, P.C., is one based on vicarious liability for the professional services of its licensed health care provider-employee; hence, plaintiff Brian Potter was required to provide a timely NOI as the action is one sounding in medical malpractice.

Moreover, we hold that the NOI filed in this case was fully compliant with the plain language of § 2912b(4), which governs its contents.  First, there is no requirement in § 2912b(4) to set forth the legal relationships between named parties; rather, the plain language of § 2912b(4)(f) only requires naming each party to be sued.  Secondly, where the only claim asserted against a PC is one for vicarious liability, and hence no other standard of care is being asserted against the PC, there is no requirement within § 2912b that mandates that a claimant set forth the legal doctrine of vicarious liability in the NOI.

The claim at issue in this case was one for vicarious liability only.  In light of MCL 450.225, a PC can only render professional services through its licensed health care provider.  Where the NOI names both the PC and the provider, the NOI is fully compliant as long as it sets forth all the factual and medical information necessary to inform the PC of the nature of the claim being asserted against the physician-provider.  Because this NOI met these requirements, it is

---

[4] Conversely, when a claim asserted against a PC involves the actions of an employee or agent who is unlicensed or not rendering professional services as delineated in MCL 450.225, the NOI requirement would be unnecessary, because such a claim would sound in ordinary negligence rather than medical malpractice.

fully compliant and there is no need to dismiss this action on the basis of the NOI. We therefore reverse the Court of Appeals judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This is a medical malpractice action involving an alleged misreading of an MRI by defendant Kristyn H. Murry, M.D., on June 7, 2001. This misreading allegedly caused a delay in a needed emergency surgical procedure on plaintiff's spine. This delay resulted in permanent nerve damage to plaintiff's spine that impairs his ability to function, including causing difficulty with such things as walking and urinating. At the time of the alleged malpractice, Murry was employed by Huron Valley Radiology.

The procedural history of this case is complicated and lengthy. This case has been pending in our appellate system for over four years as the courts have conducted an exhaustive review of the content of Potter's affidavit of merit and his NOI. The Court of Appeals has issued two opinions, and we are reviewing this case for the second time.[5] The most recent Court of Appeals opinion summarized this long journey through our appellate system and the reasoning behind the rulings:

---

[5] *Potter v McLeary*, 482 Mich 1004 (2008); *Potter v McLeary*, 480 Mich 915 (2007); *Potter v McLeary*, 278 Mich App 279; 748 NW2d 599 (2008); *Potter v McLeary*, 274 Mich App 222; 732 NW2d 600 (2007).

4

In these consolidated appeals, defendants appealed by leave granted orders in this medical malpractice action denying their motions for summary disposition pursuant to MCR 2.116(C)(7). Previously, a majority of this Court reversed, holding that plaintiff's complaint should be dismissed with prejudice because the attached affidavits of merit did not conform to the requirements of MCL 600.2912d. *Potter v McLeary*, 274 Mich App 222; 732 NW2d 600 (2007). In lieu of granting leave to appeal, our Supreme Court reversed the portion of this Court's judgment "dismissing the complaint *with* prejudice, because the dismissal should have been *without* prejudice . . . ." See 480 Mich 915 (2007) (emphasis in original). Our Supreme Court remanded to this Court for consideration of the remaining issues not addressed previously. We now affirm in part, reverse in part, and remand.

As noted in our previous opinion, the alleged malpractice took place on June 7, 2001. The period of limitations in medical malpractice cases is two years from the date the claim accrued. MCL 600.5805(6). Presuming the notice of intent was sufficient, the running of the period of limitations would have been tolled for 182 days from the date of the notice. MCL 600.2912b(1). A notice of intent was sent to defendants Huron Valley Radiology, P.C., and Kristyn H. Murry, M.D., on May 30, 2003, leaving eight days remaining before the period of limitations expired. A notice of intent was sent to defendants St. Joseph Mercy Hospital Ann Arbor, Robert Domeier, D.O., and Emergency Physicians Medical Group, P.C., on May 13, 2003, leaving 25 days before the period of limitations expired. The notices tolled the running of the limitations periods, which recommenced on November 30, 2003, and on November 13, 2003, respectively. The limitations period expired on December 8, 2003, for all defendants. Plaintiff's complaint was filed on November 4, 2003.

There was no serious dispute in our prior decision that the affidavits of merit were fatally defective because they failed [to] state how the physicians' alleged failures related to plaintiff's alleged injuries, so they did not contain the required statement of proximate cause. See MCL 600.2912d. No conforming affidavits of merit were filed by December 8, 2003. A majority of this Court previously determined that plaintiff had therefore not filed an affidavit of merit at all, pursuant to *Geralds v Munson Healthcare*, 259 Mich App 225, 240; 673 NW2d 792 (2003), and *Mouradian v Goldberg*, 256 Mich App 566, 574; 664 NW2d 805 (2003), so

plaintiff's complaint should be dismissed with prejudice. This Court therefore deemed it unnecessary to address defendants' challenges to plaintiff's notices of intent.

After this Court's previous decision, our Supreme Court overruled *Geralds* and *Mouradian* as having misapplied the case of *Scarsella v Pollak*, 461 Mich 547, 553; 607 NW2d 711 (2000). *Kirkaldy v Rim*, 478 Mich 581, 583-584; 734 NW2d 201 (2007). Our Supreme Court explained that *Scarsella* had only held that "a medical-malpractice complaint filed *without* an affidavit of merit" was ineffective and would not toll the running of the applicable limitations period. *Id*. at 584 (emphasis in original). It further explained that *Geralds* and *Mouradian* had wrongly extended that holding to medical-malpractice complaints that were actually filed with affidavits of merit, but where those affidavits of merit failed to conform to the requirements of MCL 600.2912d. *Kirkaldy*, *supra* at 584-585. Our Supreme Court concluded that an affidavit of merit is presumptively valid—and therefore tolls the running of a limitations period when filed with a complaint—until successfully challenged in a judicial proceeding. *Id.* at 585-586. "Thus, if the defendant believes that an affidavit is deficient, the defendant must challenge the affidavit," and the proper remedy for a successful challenge is dismissal without prejudice, affording the plaintiff "whatever time remains in the period of limitations" to file a complaint with a conforming affidavit. *Id*. at 586.

Our Supreme Court's partial reversal in this case was based on its decision in *Kirkaldy*. As applied to the case at bar, plaintiff's complaint, filed with the affidavits of merit, tolled the running of the limitations period. Because we conclude that those affidavits of merit did not conform to the requirements of MCL 600.2912b, the proper remedy is for the trial court to dismiss plaintiff's complaint without prejudice. Plaintiff may then file a new complaint with conforming affidavits of merit within the time remaining in the limitations period.

Because we declined to do so previously, we must address defendants Murry's and Huron Valley Radiology's challenges to the sufficiency of the notices of intent sent to them. Murry and Huron Valley Radiology first argue that the notice does not properly state the applicable standard of practice or care as required by MCL 600.2912b(4)(b). We agree, in part. The second paragraph of plaintiff's notice sets forth the following standard of care:

6

The standard of care required Drs. Murry and/or [Gary] Augustyn and/or [Richard C.] McLeary to correctly read, interpret and report the correct results to the emergency room under the circumstances. Notwithstanding that standard of care, Drs. Murry and/or Augustyn and/or McLeary failed to properly interpret the MRI images and convey accurate information to the emergency room physician in charge of the patient that night.

The standard of care completely fails to make any reference to defendant Huron Valley Radiology. Our Supreme Court has explained that plaintiff is not obligated to provide a completely correct standard of care, but "plaintiff was required to make a good-faith averment of *some* particularized standard for each of the professionals and facilities named in the notices." *Roberts v Mecosta Co Gen Hosp* (*After Remand*), 470 Mich 679, 694; 684 NW2d 711 (2004) (emphasis in original). The standard alleged here is more than the tautology rejected in *Roberts*, and we find it adequate with regard to defendant Murry. Plaintiff articulated a specific standard that Murry must correctly read, interpret, and report the results of the MRI test. This is specific to the requirements of the service that plaintiff received from Murry. It was sufficient to put defendant Murry on notice of the nature of the claim, which was failure to properly identify and report plaintiff's injury. Therefore, it met the requirements of MCL600.2912b(4)(b) with regard to Murry. However, the notice cannot satisfy all the statutory requirements with regard to defendant Huron Valley Radiology.

* * *

Because no other challenges to the notices of intent are raised, we will not consider them further. Therefore, the trial court properly denied summary disposition on the basis of the notices of intent to all defendants other than Huron Valley Radiology. With regard to Huron Valley Radiology, we believe that our Supreme Court's treatment of deficient—but actually filed—affidavits of merit should, by analogy, be applied to deficient—but again actually filed— notices of intent, as well. See *Kirkaldy*, *supra* at 586. Notices of intent are presumed to be valid and proper, so they support the filing of a complaint after the notice period has run, unless and until the notice is successfully challenged. The remedy to be applied if a notice is successfully challenged is dismissal without prejudice, affording the plaintiff the opportunity to cure the deficiency within the time remaining within the limitations period as

7

theretofore tolled by the now-invalidated notice or the subsequent filing of the complaint.

We hold as follows: summary disposition is granted without prejudice to Huron Valley Radiology on the basis of the notice of intent, summary disposition is denied to all other defendants on the basis of the notices of intent, and summary disposition is granted without prejudice to all defendants on the basis of the affidavits of merit. The applicable limitations periods remain tolled until entry of the grants of summary disposition. We remand for further proceedings consistent with this opinion.[6]

On March 20, 2008, plaintiff filed an application for leave to appeal asking this Court to grant leave to consider whether his NOI complied with the content requirements of § 2912b. On October 1, 2008, this Court granted leave; however, the issue was limited to the threshold question of whether it was necessary to provide an NOI to a PC. That order provided:

On order of the Court, the application for leave to appeal the March 20, 2008, judgment of the Court of Appeals is considered and, it is granted, limited to the issue whether defendant Huron Valley Radiology, P.C. is a "health facility or agency" to which a plaintiff is required to provide notice under MCL 600.2912b(1). See MCL 333.20106(1).[7]

Despite the limited grant order, the parties addressed the content of the NOI and whether it was defective in their briefing and in oral argument while advancing their respective positions.[8] After oral argument, the Court expanded the

---

[6] *Potter*, 278 Mich App at 281-286.

[7] *Potter*, 482 Mich at 1004.

[8] Defendant Huron Valley Radiology addressed the sufficiency of the NOI issue extensively in its brief on appeal. This brief sets forth the sufficiency issue as one of the questions presented for us to decide. The brief also sets forth the

8

grant order by asking the parties to file supplemental briefs on the additional issue

of the tolling of the statute of limitations:

> Oral argument having been heard on March 4, 2009, the parties are directed to submit supplemental briefs addressing the issue whether, if a defendant professional corporation is not an entity to whom notice is required to be provided under MCL 600.2912b, the applicable statute of limitations, MCL 600.5805(6), was nonetheless subject to statutory tolling provided in former MCL 600.5856(d).[9]

As we have resolved the threshold issue by holding that Potter must provide an

NOI to Huron Valley Radiology, we must also resolve the underlying issue of

whether this NOI is defective in order to conclude the analysis in this case. We

take particular note of the fact that it has been over eight years since the

malpractice occurred and nearly six years since the subject NOI was mailed to

defendants. Further, it has been over 5½ years since the complaint was filed, with

the last four years having been devoted to the appeal of issues relating to the

affidavit of merit and the NOI. The parties are still waiting to have a court address

the merits of the case. Given that we have had briefing and argument on all

---

entire content of the NOI and articulates the view that the NOI is defective. The brief cites statutes and cases to support its position. Moreover, in its prayer for relief, defendant asks us to decide the remaining issues in plaintiff's application for leave to appeal. One of the two remaining questions in plaintiff's application for leave to appeal is whether the NOI was defective. Further, plaintiff sufficiently addressed this issue at oral argument. The briefs and transcript of the oral argument can be viewed at: http://www.courts.michigan.gov/supremecourt/Clerk/03-09/136336/136336-Index.html.

[9] *Potter v Murry*, 483 Mich 922 (2009).

necessary issues, we can decide in this opinion both whether the plaintiff must provide a PC an NOI before commencing an action as well as whether the subject NOI was compliant with § 2912b.

## II.  STANDARD OF REVIEW

The issues presented are issues of statutory interpretation.  Statutory interpretation is a question of law, which this Court reviews de novo.[10]  This Court also reviews de novo a trial court's decision regarding a motion for summary disposition.[11]

## III.  ANALYSIS

Interpretation of the NOI provision presents questions of statutory construction.  Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[12]  In determining the intent of the Legislature, this Court must first look to the language of the statute.[13]  The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of

---

[10] *In re Investigation of March 1999 Riots in East Lansing (People v Pastor)*, 463 Mich 378, 383; 617 NW2d 310 (2000).

[11] *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000).

[12] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[13] *Id.*

the Legislature.[14] "'As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.'"[15] Moreover, when considering the correct interpretation, the statute must be read as a whole.[16] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[17] In defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme.[18] A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained.[19] Finally, the statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme.[20]

---

[14] *Id.* at 135.

[15] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570, 579 (2008), quoting *Sun Valley*, *supra* at 237.

[16] *Sun Valley*, *supra* at 237.

[17] *Herman*, *supra* at 366.

[18] *Id.*, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[19] *Wayne Co v Auditor General*, 250 Mich 227, 223; 229 NW 911 (1930).

[20] *Wayne Co*, *supra* at 234.

A.  The Nature of Services Provided by a Professional Corporation

Before we address whether a plaintiff must provide an NOI to a PC, it is necessary to review the legal structure of a PC and understand the nature of the services it provides.  Since a professional corporation is a statutory creature, we look to the Professional Service Corporation Act, MCL 450.221 *et seq.*, for guidance.  The relevant provision of that act provides, in pertinent part:

> *A corporation organized and incorporated under this act shall not render professional services within this state except through its officers, employees, and agents who are duly licensed or otherwise legally authorized to render the professional services within this state.*  The term employee does not include secretaries, bookkeepers, technicians, and other assistants who are not usually and ordinarily considered by custom and practice to be rendering professional services to the public for which a license or other legal authorization is required.  [MCL 450.225 (emphasis added).]

This provision makes clear that a PC, while a separate legal entity, does not render professional services on its own; rather, it can only render professional services through its employees or agents who are licensed or legally authorized to render the professional services.  This language stands as a legislative recognition that when a PC renders professional services, it is inexorably linked to the licensed health care provider.  For all practical purposes, the PC and the health care provider are treated as the same entity when professional services are involved.[21]  Moreover, a PC can perform other types of services or take other actions through

---

[21] See *Peters v Golds*, 366 F Supp 150 (1973), which held that a PC is treated as a person for purposes of § 5838a.

12

unlicensed employees or agents, but such actions would not constitute professional services under the act. This delineation of types of services is emphasized not only in the first sentence, it is reasserted in the second sentence of MCL 450.227, which states that "[t]he term employee does not include secretaries, bookkeepers, technicians, and other assistants who are not usually and ordinarily considered by custom and practice to be rendering professional services to the public for which a license or other legal authorization is required." Thus, a PC can engage in two different types of actions: those that are professional services and those that are not. While the PC is vicariously liable for either of these types of actions pursuant to MCL 450.226,[22] this distinction is pertinent in determining whether the medical malpractice statutes apply to a particular cause of action.

---

[22] MCL 450.226 provides:

> Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct. Any officer, shareholder, agent or employee of a corporation organized under this act shall remain personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation to the person for whom such professional services were being rendered. The corporation shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, agents or employees while they are engaged on behalf of the corporation in the rendering of professional services.

13

### B. Professional Corporations and the NOI Requirement

We now examine whether a plaintiff is required to provide an NOI to a PC before commencing a medical malpractice action. We start our analysis by examining the language of the NOI provision itself. Section 2912b states in relevant part:

> (1) *Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility* unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced. [Emphasis added.]

The first sentence in this section provides critical guidance. The statute expressly limits the requirement of an NOI to an action alleging medical malpractice: "[A] person shall not commence an action alleging medical malpractice . . . ." Thus, the first step in the analysis is to determine whether the action sounds in medical malpractice or ordinary negligence. Only those actions sounding in medical malpractice are governed by the mandates of this statute.

This Court recently reiterated the method by which claims of medical malpractice and ordinary negligence are distinguished. In *Kuznar*, this Court was asked to determine whether a claim against a pharmacy for the actions of its non-licensed technicians sounded in medical malpractice or in ordinary negligence. In holding that the claims sounded in ordinary negligence, *Kuznar* reiterated the long standing rule that claims sound in medical malpractice only when a two-prong test is met. First, the claim must occur in the course of a professional relationship, and

14

second, the claim must pose questions of medical judgment outside the realm of common knowledge and experience. If either prong is not met, the action sounds in ordinary negligence rather than medical malpractice.[23] With regard to the first prong, *Kuznar* stated:

> A professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional health-care services to the plaintiff. Under the common law, only physicians and surgeons were potentially liable for medical malpractice. But in MCL 600.5838a(1), the Legislature expanded the scope of those who could be liable for medical malpractice. It provided for medical malpractice claims to be brought against "a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency . . . ."
>
> The primary issue in this case is whether the pharmacy technician and the pharmacy are covered by MCL 600.5838a(1).[24]

*Kuznar* correctly opined that only those health care providers and facilities designated within § 5838a could be sued for malpractice. Therefore, only those providers and facilities covered by § 5838a can meet the professional relationship prong of the test. Accordingly, *Kuznar* reviewed the language of § 5838a(1) to determine if a pharmacy was a designated entity. Section 5838a(1)(a) defines a "licensed health facility or agency" as "a health facility or agency licensed under

---

[23] There is no dispute that the second prong of the *Kuznar* test has been met in this case. The claim indisputably presents questions of medical judgment outside the realm of common knowledge and experience.

[24] *Kuznar*, *supra* at 177.

article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22260 of the Michigan Compiled Laws."

Because § 5838a(1)(a) limits its application to only those health facilities and agencies licensed under article 17 of the Public Health Code, *Kuznar* next turned its attention to MCL 333.20106(1) to determine whether a pharmacy was within the list of designated entities. MCL 333.20106(1) provides that "health facility or agency" means:

> (a) An ambulance operation, aircraft transport operation, nontransport prehospital life support operation, or medical first response service.

> (b) A clinical laboratory.

> (c) A county medical care facility.

> (d) A freestanding surgical outpatient facility.

> (e) A health maintenance organization.

> (f) A home for the aged.

> (g) A hospital.

> (h) A nursing home.

> (*i*) A hospice.

> (j) A hospice residence.

> (k) A facility or agency listed in subdivisions (a) to (h) located in a university, college, or other educational institution.

16

*Kuznar* concluded that because pharmacies were not included within this list, the claims asserted against them did not sound in medical malpractice.[25] Rather, the claims asserted against the pharmacy sounded in ordinary negligence, and, accordingly, the medical malpractice statutes simply did not apply. It is this same statutory provision and analysis that has led to the question we now address. Because this same list of health facilities contained in § 333.20106(1) does not include PCs, the question arises whether PCs are exempt from any of the requirements of the medical malpractice statutory scheme. We conclude that it is unnecessary to refer to the list in § 333.20106(1) in this instance because the plain language of § 600.5838a, as amended effective April 1, 1994, expressly includes professional corporations within its definitional section.

Section 5838a, as amended, provides in pertinent part:

> (1) For purposes of this act, *a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility* or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, *whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health profession in a* sole proprietorship, partnership*, professional corporation,* or other

---

[25] We note that satisfying the first prong of *Kuznar* requires more than mere inclusion within the public health code lists. The service provided must also be a professional service, the determination of which requires further analysis. For example, while hospitals are included in the list, not all hospital employees, such as janitors and dietary aides, provide professional services. However, inclusion within either § 5838a or the public health code lists is a necessary predicate to an action sounding in medical malpractice.

17

business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. *As used in this subsection*:

> (a) "Licensed health facility or agency" means a health facility or agency licensed under article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22260 of the Michigan Compiled Laws.

> (b) *"Licensed health care professional" means an individual licensed or registered under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.16101 to 333.18838 of the Michigan Compiled Laws, and engaged in the practice of his or her health profession in a* sole *proprietorship, partnership, professional corporation, or other business entity.* However, licensed health care professional does not include a sanitarian or a veterinarian. [Emphasis added.]

This amendment of § 5838a was enacted as part of the same package of bills that created the NOI provision in April of 1994.[26] The amended § 5838a refers to professional corporations twice. Before this amendment, § 5838a made no reference whatsoever to professional corporations.[27] This specific addition of

---

[26] Section 5838a and § 2912b were both amended by 1993 PA 78, effective April 1, 1994.

[27] The former § 5838a provided:

> (1) A claim based on the medical malpractice of a person who is, or who holds himself or herself out to be, a licensed health care professional, licensed health facility or agency, employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, or any other health care professional, whether or not licensed by the state, accrues at the time of the act or omission which is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. As used in this subsection:

*professional corporations* to § 5838a was a clear statement by the Legislature that it intended a PC to be an entity against which a medical malpractice action could be asserted. Further, the placement of the reference to *professional corporations* within § 5838a(1)(b) (defining heath care professionals), rather than within § 5838a(1)(a) (defining health facilities), stands as a recognition of the nature of services as delineated in the Professional Service Corporation Act, MCL 450.225. When a PC renders professional services, it is rendering those professional services through the licensed health care provider and the two are treated as though they are one entity.

Finally, § 5838a recognizes that some services provided by a PC are professional services while others are not. Where the services provided are *professional services* rendered by a licensed health care provider, any claim challenging those services as being negligent sound in medical malpractice, and the statutes governing medical malpractice apply. Where the services provided by a PC are not professional services as defined in MCL 450.225, the claim would

> (a) "Licensed health facility or agency" means a health facility or agency licensed under article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22181 of the Michigan Compiled Laws.
>
> (b) "Licensed health care professional" means an individual licensed under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.16101 to 333.18838 of the Michigan Compiled Laws. Licensed health care professional does not include a sanitarian or a veterinarian.

not be subject to the medical malpractice requirements because those claims sound in ordinary negligence. To hold otherwise would negate the intent of the Legislature and ignore the proper rules of statutory construction, which require that any one statute be read in conjunction with other relevant statutes to ensure that legislative intent is being correctly ascertained.

Accordingly, in the instant case, the first prong of the *Kuznar* test is met because a PC is a covered entity under § 5838a and the services provided were professional services. The second prong of the *Kuznar* test is also met because there is no dispute that the claims asserted posed questions of medical judgment outside the realm of common knowledge and experience. Consequently, because both prongs of the *Kuznar* test have been met, we conclude that this is a claim that sounds in medical malpractice. Because §2912b(1) clearly requires a claimant to provide a timely NOI before commencing a medical malpractice action, plaintiff was required to provide this PC with a timely NOI.

## C. The Content Requirements of MCL 600.2912b

Because plaintiff did provide an NOI to Huron Valley Radiology, the next issue is whether the NOI was defective. The resolution of this issue requires an examination of the content requirements of § 2912b. The Court of Appeals ruled that the instant NOI contained a defect, thereby necessitating dismissal of the action without prejudice. The purported defect in the NOI can be summarized as the failure of plaintiff to set forth a statement in the NOI that Dr. Murry was the

employee of Huron Valley Radiology and that this PC was vicariously liable for the actions of its employee-doctor. We take note of the fact that both the trial court and the Court of Appeals have held that the NOI was fully compliant with the content requirements under § 2912b(4) in all respects regarding Dr. Murry, a holding with which we fully agree. Also, we note that the only claim pursued against Huron Valley Radiology was one for vicarious liability for the actions of Dr. Murry, and the NOI fully informed Huron Valley Radiology and Dr. Murry of the claim being asserted against Dr. Murry. Thus, we are compelled to review § 2912b to determine if there is a statutory mandate to specifically set forth the legal relationship between these two parties in the NOI, and whether there is a statutory mandate to set forth that the claim asserted is one for vicarious liability when no other claims are being asserted. Our inquiry once again necessarily begins with an examination of the language of § 2912b.

The first question we examine is whether § 2912b requires that legal and employment relationships between the parties be set forth in an NOI. We hold that the answer is no. The content requirements for an NOI are set forth in subsection 2912b(4):

> (4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
> (a) The factual basis for the claim.
> (b) The applicable standard of practice or care alleged by the claimant.
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional

21

or health facility.

> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

We find no language in this subsection that requires a claimant to set forth the nature of the relationship between the parties to be sued. To the contrary, subsection f clearly states that all that need be done in this regard is to identify the names of the health professional and facility being notified. We cannot add a requirement that is not contained in the statute's plain language. Moreover, we cannot assume that defendants were unable to comprehend the nature of the relationship between them without having a claimant advise them in writing that such a relationship exists. Certainly they are fully aware of the legal relationship between them.[28] More importantly, however, there simply is no requirement in the statute that a claimant advise the defendants of their legal or employment relationship.[29] Accordingly, Potter's NOI was not defective in this regard.

---

[28] Moreover, it would be illogical to assume that a claimant knows the precise legal relationship between defendants. The provider may have either an actual employment relationship with the PC or they may have a complex independent contractor arrangement. While the PC can be vicariously liable for the acts of either under MCL 450.226, the statute logically imposes no requirement on the claimant to allege the precise nature of the relationship.

[29] However, even assuming for the sake of argument that there was a requirement to set forth legal relationships in the statute, the NOI meets that burden. Plaintiff's NOI does more than merely name the entities to be sued; the

Our next query is whether § 2912b(4) contains a requirement that the claimant specifically set forth the legal theory of vicarious liability within the NOI, when vicarious liability is the only claim asserted. We again hold that the answer is an unequivocal no. There is nothing in the language of § 2912b(4) that states that a claimant must set forth the legal theory of vicarious liability. Nor can we add such a requirement to the statute. The statute is focused on a requirement that the claimants advise the recipient of the factual and medical basis of the claim being asserted.[30] If no other claim is asserted against the PC, then there is no possibility for confusion regarding the nature of the claim being asserted against it. If the claimant wishes to make some other claim against the PC, then the claimant

_____

NOI names Huron Valley Radiology, P.C. as well as the three individual physicians and "their employees or agents, actual or ostensible, thereof." This phrase is repeated three times throughout the NOI. This language is more than sufficient to provide Huron Valley Radiology with notice of the facts establishing the legal relationships at such an early stage of the proceeding.

[30] Any argument that it is necessary to plead facts supporting vicarious liability or to state the phrase "vicarious liability" as part and parcel of the "factual basis of the claim" is misplaced and misreads the NOI statute. Section 2912b(4) does not contain such a requirement and we must assume that the absence of the requirement was purposeful. If the Legislature wanted such a requirement it could have easily included it. It could have phrased § 2912b(4)(a) as "the factual and legal basis for the claim and whether the claim is for direct liability or vicarious liability." But it did not do so. The Legislature could also have inserted additional mandates, such as requiring the claimant to set forth that the "provider is licensed to practice medicine in Michigan" or "the provider is licensed under a specific provision of the public health code." However, again, the Legislature chose not to do so. Absent statutory guidance, we cannot impose additional requirements upon claimants. The better judicial practice is to refrain from adding requirements to a statute that are not contained within its language.

23

would be required to set forth that additional claim in order to satisfy the § 2912b (4)(b) "applicable standard of care" requirement. But if the only claim asserted against the PC is one for vicarious liability, the "applicable standard of care" requirement is met because there is only one standard of care: the standard of care for the provider. There is no separate standard of care for the PC. This analysis not only holds true to the statutory language, but also fully recognizes that the agent and principal share a singular identity for purposes of performing professional services, pursuant to the statute governing professional corporations.[31] Accordingly, where the NOI adequately sets forth the claim against the agent or employee, the claimant need not repeat the same information, or state the words "vicarious liability" in the NOI, because the statute does not require the claimant to do so.

Moreover, we find Huron Valley Radiology's assertions especially troubling because it openly admits knowing and understanding that it is vicariously liable for the actions of its employee, Dr. Murry. In other words, while admitting that it employs Dr. Murry, Huron Valley Radiology simultaneously asks that we dismiss plaintiff's case for plaintiff's failure to tell it that it employs Dr. Murry. We query what purpose such a statement would serve. Huron Valley Radiology's proposition exalts form over substance in an intolerable manner. More importantly, however, because there is no requirement in the statute to state

---

[31] MCL 450.225.

24

the legal term of "vicarious liability" within the NOI, we will not hold plaintiff to this requirement, nor will we write such a requirement into the statute.[32]

This holding is also consistent with this Court's longstanding principles forming the foundation of vicarious liability. A master is bound to keep his or her servants within their proper bounds, and is responsible if he or she does not. "The law contemplates that their acts are his acts, and that he is constructively present at them all."[33] This Court has long held that a principal "is only liable because the law creates a practical identity with his men [agents], so that he is held to have

---

[32] We do not believe that this Court's ruling in *Roberts v Mecosta Co Gen Hosp (Roberts II)*, 470 Mich 679; 684 NW2d 711 (2004), is dispositive. *Roberts II* discussed a similar issue that arose when the plaintiff asserted claims in a manner that left confusion regarding whether the claims asserted were for direct liability, vicarious liability, or both. The Court stated:

> Although it appears from plaintiff's complaint that she is claiming that the hospital and professional corporation are vicariously liable for the negligence of their agents, the notices of intent implied that plaintiff alleged direct negligence against these defendants for negligently hiring or negligently granting staff privileges to the individual defendants. [*Roberts II*, *supra* at 693.]

We question whether *Roberts II* was correctly decided because it adds a requirement not found in the language of the statute; namely, that statements be "particularized." However, *Roberts II* opined that because there was confusion with regard to whether the claim was for direct or vicarious liability, the PC was unable to understand the nature of the claims being asserted. In the case before us, no such potential for confusion exists, and, accordingly, *Roberts II* is distinguishable.

[33] *Smith v Webster*, 23 Mich 298, 299 (1871).

25

done what they have done."[34]  This longstanding legal doctrine is embodied in MCL 450.225.  As previously discussed, that statute recognizes that a PC can only render professional services through its licensed health care providers. Accordingly, with regard to vicarious liability claims, the parties are in fact the same actor, and therefore, there is no need for a claimant to duplicate the same information in the NOI for both parties.  If the information contained within the NOI is sufficient with regard to the agent, it is sufficient with regard to the principal, because they share a practical identity for purposes of that claim.

In sum, the issue is whether Huron Valley Radiology could reasonably be held to comprehend the nature of the claims being asserted against it.  The NOI provided the necessary information for both the PC and the doctor to have such an understanding.  The only claim asserted against Huron Valley Radiology was for the actions of Dr. Murry, and those actions were fully and adequately set forth in the NOI.  Nothing more is required.  We conclude that the NOI in this case was not defective and dismissal of the action is not warranted.

## IV.  CONCLUSION

We hold that a plaintiff must provide a timely NOI to a PC before commencing a medical malpractice action when the claims alleged against the PC are predicated on its vicarious liability for a licensed health care provider who is

---

[34] *Id.* at 300.  See also *Ducre v Sparrow-Kroll Lumber Co*, 168 Mich 49, 52; 133 NW 938 (1911).

26

rendering professional services. Because the claim against Huron Valley Radiology is based on vicarious liability for the professional services of its employee, a licensed health care provider, plaintiff was required to provide a timely NOI as the action is one sounding in medical malpractice.

Moreover, we conclude that the NOI filed in this case was fully compliant with the plain language of § 2912b(4), which governs its contents. First, there is no requirement in § 2912b(4) to set forth the legal relationships between named parties; rather, the plain language of § 2912b(4)(f) only requires naming each party to be sued. Secondly, where the only claim asserted against a PC is one for vicarious liability, and hence no other standard of care is being asserted against the PC, there is no requirement within § 2912b that mandates that a claimant set forth the legal doctrine of vicarious liability in the NOI.

The claim at issue in this case was one for vicarious liability only. In light of MCL 450.225, a PC can only render professional services through its licensed health care provider. Where the NOI names both the PC and the provider, the NOI is fully compliant so long as it sets forth all of the factual and medical information necessary to inform the PC of the nature of the claim being asserted against the physician-provider. Because this NOI meets these requirements, it is fully compliant and there is no need to dismiss this action on the basis of the NOI.

We therefore reverse the Court of Appeals judgment and remand the case to the trial court for further proceedings consistent with this opinion. Furthermore,

27

we vacate the order abeying the applications for leave to appeal in *Potter v McLeary* (Docket Nos. 136338 and 136339) and deny the applications in light of this opinion.

Diane M. Hathaway
Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

BRIAN POTTER,

      Plaintiff-Appellant,

v                                          No. 136336

RICHARD C. McLEARY, M.D., GARY
AUGUSTYN, M.D., ST. JOSEPH MERCY
HOSPITAL ANN ARBOR, d/b/a TRINITY
HEALTH-MICHIGAN, ROBERT
DOMEIER, D.O., and EMERGENCY
PHYSICIANS MEDICAL GROUP, P.C.,

      Defendants,

and

KRISTYN H. MURRY, M.D. and HURON
VALLEY RADIOLOGY P.C.,

      Defendants-Appellees.
_____

KELLY, C.J. (*concurring*).

      I fully agree with and sign the majority opinion in this case. I write for the sole purpose of responding to Justice Markman's comments attacking the majority's respect for the doctrine of stare decisis. In his partial concurrence and partial dissent, Justice Markman repeats a claim that he and Justices Corrigan and

Young have published numerous times this term[1] with the same string of citations.[2]  The claim is that their colleagues who comprise the majority in this case have been ignoring precedent.  A review of the cases in the string citation serves to illustrate that the claim is simply false.

Justice Markman claims that in *Vanslembrouck v Halperin*,[3] the Court ignored *Vega v Lakeland Hosps*.[4]  However, *Vanslembrouck* is distinguishable from *Vega* because *Vega* determined that MCL 600.5851(1) is a saving provision, whereas *Vanslembrouck* held that MCL 600.5851(7) is a statute of limitations.  Thus, these cases examined the effect of altogether different statutory provisions.

Justice Markman also claims that in *Hardacre v Saginaw Vascular Services*,[5] the Court failed to follow *Boodt v Borgess Med Ctr*.[6]  However, in

---

[1] See, e.g., *Petersen v Magna Corp*, 484 Mich ___; ___ NW2d ___ (2009) (Markman, J., dissenting), decided July 31, 2009 (Docket Nos. 136542 and 136543); *Chambers v Wayne Co Airport Auth*, 483 Mich 1081, 1082 (2009) (Corrigan, J., dissenting); *Scott v State Farm Mut Auto Ins Co*, 483 Mich 1032, 1036 (2009) (Corrigan, J., dissenting); *Beasley v Michigan*, 483 Mich 1025, 1027 (2009) (Corrigan, J., dissenting); *Juarez v Holbrook*, 483 Mich 970 (2009) (Markman, J., dissenting).  Justice Young joined the dissenting statements in *Chambers*, *Scott*, *Beasley*, and *Juarez*.

[2] *Post* at 30 n 23.

[3] *Vanslembrouck v Halperin*, 483 Mich 965 (2009).

[4] *Vega v Lakeland Hospitals at Niles-St Joseph, Inc*, 479 Mich 243; 736 NW2d 561 (2007).

[5] *Hardacre v Saginaw Vascular Services*, 483 Mich 918 (2009).

[6] *Boodt v Borgess Med Ctr*, 481 Mich 558; 751 NW2d 44 (2008).

2

*Hardacre*, the Court denied leave to appeal because the allegations in the plaintiff's notice of intent to find an action did not need to comply with *Boodt.* In *Hardacre*, the burden of explication of the standard of care was minimal.[7]

Nor did the Court ignore precedents with which it disagrees in *Sazima v Shepherd Bar & Restaurant*.[8] Justice Markman claims that the Court failed to follow *Chrysler v Blue Arrow Transport Lines*.[9] However, *Sazima* involved exceptions to the "going and coming" rule as set forth in *Camburn v Northwest School Dist*.[10] Thus, the Court was not bound by *Chrysler*.

Justice Markman next claims the Court ignored *Smith v Khouri*[11] when it decided *Juarez v Holbrook*.[12] However, in *Juarez*, it was undisputed that the trial court performed a reasonableness analysis in calculating the proper attorney fee award. Therefore, a remand in light of *Smith* was unnecessary.

---

[7] See *Roberts v Mecosta Co Gen Hosp* (*After Remand*), 470 Mich 679, 694 n 12; 684 NW2d 711 (2004).

[8] *Sazima v Shepherd Bar & Restaurant*, 483 Mich 924 (2009).

[9] *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606; 295 NW 331 (1940).

[10] *Camburn v Northwest School Dist* (*After Remand*), 459 Mich 471, 478; 592 NW2d 46 (1999).

[11] *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008).

[12] *Juarez, supra*.

In *Beasley v Michigan*,[13] the Court considered the statutory notice provision of MCL 600.6431(3). Thus, contrary to Justice Markman's claim, the Court was not bound by *Rowland v Washtenaw Co Rd Comm*.[14] *Rowland* interpreted the notice provision of MCL 600.1404(1); thus, the cases involved different statutory provisions altogether.

Likewise, Justice Markman is incorrect in claiming that the Court failed to enforce *Thornton v Allstate Ins Co*[15] and *Putkamer v Transamerica Ins Corp of America*[16] in *Scott v State Farm Mut Auto Ins Co*.[17] In *Scott*, the Court of Appeals undertook a thorough analysis of the relevant no-fault jurisprudence and applied precedent as it has been understood for nearly 30 years.

Finally, the Court did not fail to abide by *Rowland* in *Chambers v Wayne Co Airport Auth*.[18] *Chambers* interpreted MCL 691.1406, while *Rowland* interpreted MCL 691.1404(1). Thus, the cases dealt with different statutory

---

[13] *Beasley v Michigan*, 483 Mich 1025 (2009).

[14] *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; 731 NW2d 41 (2007).

[15] *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986).

[16] *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997).

[17] *Scott*, *supra* at 1032.

[18] *Chambers*, *supra*.

4

provisions and the Court was not bound to extend *Rowland* to the statute at issue in *Chambers*.

In summary, the accusation that the Court has been ignoring precedent is incorrect. Had other Justices been in the majority in some of the decisions complained about, they might well have extended existing precedent to a new area of the law. But the refusal of those in the majority in this case to so extend precedent is quite different from a refusal on their part to apply it. This is a distinction that Justices Markman, Corrigan, and Young would do well to concede.

Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

BRIAN POTTER,

     Plaintiff-Appellant,

v                                           No. 136336

RICHARD C. McLEARY, M.D., GARY
AUGUSTYN, M.D., ST. JOSEPH MERCY
HOSPITAL ANN ARBOR, d/b/a TRINITY
HEALTH-MICHIGAN, ROBERT
DOMEIER, D.O., and EMERGENCY
PHYSICIANS MEDICAL GROUP, P.C.,

     Defendants,

and

KRISTYN H. MURRY, M.D., and HURON
VALLEY RADIOLOGY, P.C.,

     Defendants-Appellees.

_____

CORRIGAN, J. (*concurring in part and dissenting in part*).

I agree with the majority and the Court of Appeals that plaintiff's notice of intent (NOI) was sufficient as to defendant Dr. Kristyn Murry. I respectfully dissent, however, from the majority's holding that defendant Huron Valley Radiology, P.C. (Huron) was entitled to a NOI. Instead, I concur with and join part I of Justice Young's partial concurrence and partial dissent with regard to whether plaintiff was required to serve defendant Huron with a NOI to commence a medical malpractice action under MCL 600.2912b. I fully agree with Justice

Young that Huron is neither a "health professional" nor a "health facility" entitled to notice under MCL 600.2912b. Whether the Legislature, by oversight or design, excluded professional corporations such as Huron from the statutory definition of "health facility or agency" in MCL 333.20106(1), it is for the Legislature, and not this Court, to decide.

Because Huron was not entitled to an NOI, plaintiff was not entitled to tolling. I share Justice Markman's concerns as discussed in part IIIC of his partial concurrence and partial dissent regarding Justice Young's analysis of the tolling issue. Specifically, I disagree that as long as a NOI is sufficient as to one defendant, the statute of limitations is tolled as to all defendants. I agree with Justice Markman's conclusion that plaintiff's complaint here was untimely filed. Accordingly, I would hold that the action against Huron was barred by the statute of limitations. Moreover, I also concur with part IIID of Justice Markman's opinion concerning whether plaintiff can retroactively amend an NOI.

Additionally, I dissent from the majority's holding that plaintiff's NOI as to Huron was sufficient. As an initial matter, I would not reach the sufficiency of the notice issue at all for the reasons set forth in part IIIE of Justice Markman's partial concurrence and dissent, with which I fully concur and join. I also concur with Justice Markman's discussion of this issue, *post* at 4 n 1. Because the Court's limited grant order did not instruct the parties to brief this issue and because both

2

the litigants and the public should be able to rely on our orders, I would not resolve issues in this Queen of Hearts fashion.[1]

Maura D. Corrigan

---

[1] See Lewis Carroll, *Alice's Adventures In Wonderland* (New York: Signet Classic, 2000), ch 12, p 115 ("'No, no!' said the Queen. 'Sentence first—verdict afterwards.'").

STATE OF MICHIGAN

SUPREME COURT

BRIAN POTTER,

      Plaintiff-Appellant,

v                                               No. 136336

RICHARD C. McLEARY, M.D., GARY
AUGUSTYN, M.D., ST. JOSEPH MERCY
HOSPITAL ANN ARBOR, d/b/a TRINITY
HEALTH-MICHIGAN, ROBERT
DOMEIER, D.O., and EMERGENCY
PHYSICIANS MEDICAL GROUP, P.C.,

      Defendants,

and

KRISTYN H. MURRY, M.D., and HURON
VALLEY RADIOLOGY, P.C.,

      Defendants-Appellees.

_____

YOUNG, J. (*concurring in part and dissenting in part*).

I concur only in the result of the majority opinion, which holds that defendant, Huron Valley Radiology, P.C. (Huron), is not entitled to dismissal.

I respectfully dissent from the majority's holding that a plaintiff is required to serve a professional corporation not enumerated in MCL 333.20106(1) with a notice of intent to commence a medical malpractice action (NOI) under MCL 600.2912b ("the NOI statute"). Such a defendant is neither a "health professional"

nor a "health facility" under the NOI statute; thus, a plaintiff is not required to give that defendant written notice under the NOI statute before commencing a medical malpractice action. I would additionally hold that plaintiff's claim against defendant Huron was tolled pursuant to MCL 600.5856(d) because plaintiff provided an NOI in compliance with the NOI statute for "a claim" that would have been barred during the applicable notice period.

I further dissent from the majority's analysis whether plaintiff's NOI was deficient. The NOI statute requires that the plaintiff provide a statement of "[t]he factual basis for the claim."[1] A necessary factual predicate for a vicarious liability claim is that there is an employer-employee (or other principal-agent) relationship, but such a statement of defendant Huron's relationship to the other individual defendants is not found in plaintiff's NOI; thus, plaintiff's NOI is defective.

As the majority opinion itself demonstrates, it is swiftly becoming increasingly acceptable for this Court to avoid attempting a precise or meaningful statutory analysis in favor of imprecise vagaries and broad pronouncements. Such analyses are favored only by those who seek a particular result and cannot find an explicable justification for it. The majority's analysis threatens to render the statutory notice procedure nugatory and undermines, if not overrules, this Court's

---

[1] MCL 600.2912b(4)(a).

precedent.[2]  I believe that this Court's decisions should be grounded in precise and rigorous analysis of the relevant statutory text and that this Court should avoid creating "inconsistencies among its cases and . . . reduce confusion in [the Court's] jurisprudence by overruling conflicting decisions."[3]

Accordingly, I would reverse the Court of Appeals and hold that defendant is not entitled to dismissal due to plaintiff's defective NOI.

## I. Plaintiff Was Not Required to Serve Defendant Huron, A Professional Corporation, With An NOI.

The Court of Appeals held that plaintiff served defendant Huron, a professional corporation, with a defective NOI and that entitled Huron to dismissal.  However, only a "health professional" and "health facility" are entitled to notice under the NOI statute, MCL 600.2912b.[4]  Thus, a threshold issue is whether defendant Huron is a "health professional" or "health facility."  If not, the

---

[2] See *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679; 684 NW2d 711 (2004) (*Roberts II*).

[3] *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 571 n 19; 702 NW2d 539 (2005).

[4] MCL 600.2912b(1) provides:

> Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a *health professional* or *health facility* unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.  [Emphasis added.]

3

defect in plaintiff's NOI is rendered moot and does not entitle defendant to dismissal.

Because plaintiff has persuasively argued in this Court that defendant Huron is neither a "health professional" nor a "health facility" entitled to notice under the NOI statute, I would hold that plaintiff's defective NOI as to defendant Huron was inconsequential.[5]

---

[5] The NOI statute only applies to medical malpractice actions. This is clearly a medical malpractice action, but not for the reasons stated by the majority. Huron is subject to medical malpractice liability because a principal sued for the medical malpractice of its agent is sued in medical malpractice.

The first step when determining whether a plaintiff has alleged medical malpractice is to consider "whether [the claim] is being brought against someone who, or an entity that, is capable of malpractice." *Bryant v Oakpointe Villa Nursing Centre*, *Inc*, 471 Mich 411, 420; 684 NW2d 864 (2004). This Court has consistently explained that the accrual statute, MCL 600.5838a, does not define, but rather, *expands* who may be sued for medical malpractice. *Bryant*, *supra* at 420-421; *Kuznar v Raksha Corp*, 481 Mich 169, 177; 750 NW2d 121 (2008). Here, plaintiff raises a claim of vicarious liability, not direct liability, against defendant Huron. See *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002).

Michigan courts have consistently recognized actions against a principal in medical malpractice under a vicarious liability theory *when the principal was not identified in the accrual statute* but the agent was subject to medical malpractice liability. See, e.g., *Francisco v Parchment Med Clinic, PC*, 407 Mich 325; 285 NW2d 39 (1979) (vicarious liability action against a professional corporation for medical malpractice of a general practitioner and surgeon *before* the amendment of MCL 600.5838a adding "professional corporation" in 1994, 1993 PA 78); *Becker v Meyer Rexall Drug Co*, 141 Mich App 481; 367 NW2d 424 (1985) (vicarious liability action against a pharmacy, which is not identified in that accrual statute, *Kuznar*, *supra*, for medical malpractice of a pharmacist); *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250; 506 NW2d 562 (1993) (same).

Conversely, this Court has held that vicarious liability claims against corporate entities were stated in ordinary negligence *because* the agent could not be liable in medical malpractice. See *Kambas v St Joseph's Mercy Hosp of*

4

This Court has previously defined the term "health facility" in the NOI statute through reference to the Public Health Code (PHC),[6] which defines "health facility or agency" as:

*Detroit*, 389 Mich 249, 256; 205 NW2d 431 (1979) which was decided when the accrual statute did not refer to a "licensed health facility or agency" or otherwise include a hospital, and held that "The defendant hospital's liability, being herein predicated upon the theory of *respondeat superior*, and having determined that nurses are not subject to the two year malpractice statute of limitations, we conclude that the three year statute of limitations is applicable to injuries arising from the negligent act of a nurse and is equally applicable to defendant employer hospital herein"; *Kuznar*, *supra* at 172 (holding that because the employee could not be liable in medical malpractice, "vicarious liability for [the employee's alleged negligence] by the pharmacy [which is not referenced in § 5838a(1)] may also proceed under the three-year statute of limitations for ordinary negligence"). Thus, when the principal is not identified in the accrual statute, a vicarious liability claim is not automatically an ordinary negligence claim. Rather, the nature of the claim depends on whether the *agent* is sued in medical malpractice.

The nature of the claim against the agent defines the vicarious liability claim. If the agent is sued in medical malpractice, the vicarious liability claim against the principal is in medical malpractice. This *does not* make the principal a "licensed health care professional." MCL 600.5838a(1)(b). It makes the principal *liable* for the acts of a "licensed health care professional."

Here, defendant Huron's agents, defendants Dr. Kristyn Murry and Dr. Richard McLeary, are radiologists subject to medical malpractice liability. There is no dispute that plaintiff's claim sounds in medical malpractice. See *Bryant*, *supra* at 422; *ante* at 15 n 23. Accordingly, plaintiff's vicarious liability claim against defendant Huron is a medical malpractice claim.

[6] See *Omelenchuk v City of Warren*, 461 Mich 567, 571 n 11; 609 NW2d 177 (2000). See also *Bates v Gilbert*, 479 Mich 451, 459; 736 NW2d 566 (2007) (using the definition of "health profession" in the PHC to define that term in MCL 600.2169—expert testimony in medical malpractice actions).

In *Omelenchuk*, the plaintiffs' decedent suffered a heart attack and the plaintiff sued the defendant city and fire department alleging medical malpractice. At issue was whether the plaintiffs' complaint was timely filed in accordance with the various notice periods in the NOI statute. A threshold issue was whether the

(a) An ambulance operation, aircraft transport operation, nontransport prehospital life support operation, or medical first response service.

(b) A clinical laboratory.

(c) A county medical care facility.

(d) A freestanding surgical outpatient facility.

(e) A health maintenance organization.

(f) A home for the aged.

(g) A hospital.

(h) A nursing home.

(*i*) A hospice.

(j) A hospice residence.

(k) A facility or agency listed in subdivisions (a) to (h) located in a university, college, or other educational institution.[7]

Several of the health facilities listed could be incorporated as professional corporations. Significantly, however, defendant Huron, although a professional corporation, is not a listed health facility. Thus, defendant Huron is not a "health facility."

---

NOI statute applied to the plaintiffs' claims against the defendants. This Court held that the NOI statute applied because the PHC "defines '[h]ealth facility' to include an 'ambulance operation' . . . . [and t]he city of Warren has an ambulance operation." *Omelenchuk*, *supra* at 571 n 11.

[7] MCL 333.20106(1).

6

The PHC does not define "health professional."  "Professional," however, is commonly defined as "a member of a profession, esp. one of the learned professions."[8]  The PHC defines "health profession" as "a vocation, calling, occupation, or employment *performed by an individual* acting pursuant to a license or registration issued under this article."[9]  Thus, only an "individual" can practice a "health profession."  Because the PHC defines "individual" as "a natural person,"[10] only a natural person can be a "health professional," and defendant Huron is therefore not a "health professional."

Instead of applying these interpretations consistent with our precedent, the majority relies on the definition of "licensed health care professional" in the accrual statute, MCL 600.5838a:[11] "an *individual* licensed or registered under

---

[8] *Random House Webster's College Dictionary* (1997).  See MCL 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language . . . .").

[9] MCL 333.16105(2) (emphasis added).

[10] MCL 333.1105(1).  See MCL 333.16101(2), which provides that the definitions in MCL 333.1101 *et seq.* are applicable to MCL 333.16105(2).

[11] MCL 600.5838a, in pertinent part, provides:

> (1) For purposes of this act, a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health

7

article 15 of the public health code . . . and engaged in the practice of *his or her* health profession in a sole proprietorship, partnership, professional corporation, or other business entity."[12]   As stated, a professional corporation is not an "individual."

Interestingly, the majority simply disregards this Court's very recent interpretation of the definition of "licensed health care professional" in the accrual statute.  In *Kuznar*, the defendant pharmacy sought the benefit of the shortened period of limitations for medical malpractice and argued that it was subject to

---

profession in a sole proprietorship, partnership, professional corporation, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. As used in this subsection:

(a) "Licensed health facility or agency" means a health facility or agency licensed under article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22260 of the Michigan Compiled Laws.

(b) "Licensed health care professional" means an individual licensed or registered under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.16101 to 333.18838 of the Michigan Compiled Laws, and engaged in the practice of his or her health profession in a sole proprietorship, partnership, professional corporation, or other business entity.  However, licensed health care professional does not include a sanitarian or a veterinarian.

[12] MCL 600.5838a(1)(b).

8

medical malpractice liability because it was a "licensed health care professional" under the accrual statute. Just last year, we *unanimously* rejected that argument and explained that "[t]he flaw in defendant's position is that the Public Health Code defines 'individual' to mean 'a natural person.'"[13] The majority's argument here suffers the same flaw that we *unanimously* rejected. A professional corporation is not "a natural person." Furthermore, a professional corporation is not "licensed or registered under article 15 of the public health code." The majority cannot acknowledge the existence of *Kuznar* without overruling it or changing its rationale here. It has therefore chosen to ignore *Kuznar*.

The majority's analysis is superficial. The majority merely announces that it discovered the term "professional corporation" in a related statute and, therefore, a professional corporation is entitled to notice. In serious statutory construction, context matters and so does grammar.

In the accrual statute, "licensed health care professional" is defined by modifying the subject, "an individual," with the clause "engaged in the practice of his or her health profession in a sole proprietorship, partnership, professional corporation, or other business entity." Thus, instead of providing that a professional corporation is a "licensed health care professional," the statute provides that practice of a health profession in a professional corporation is simply

---

[13] *Kuznar*, *supra* at 179, quoting MCL 333.1105(1).

9

one way for "an individual" to meet the requirements to be a "licensed health care professional."

The context of subsection (1) of the accrual statute also betrays the majority's position. It provides, in pertinent part, that

> a claim based on the medical malpractice of a person . . . who is . . . a licensed health care professional, . . . whether or not the licensed health care professional . . . is engaged in the practice of the health profession in a sole proprietorship, partnership, professional corporation, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice . . . . [MCL 600.5838a(1).]

Thus, the reference to a professional corporation makes clear that practice in a professional corporation does not affect when a medical malpractice claim accrues.

Moreover, the majority's interpretation is repudiated by the rule of statutory interpretation that prohibits rendering statutory terms surplusage or nugatory.[14] The majority proclaims that "[f]or all practical purposes, the PC and the health care provider are treated as the same entity when professional services are involved."[15] This pronouncement is designed to ignore reality and the actual text of the statute.

---

[14] See *Odom v Wayne Co*, 482 Mich 459, 471; 760 NW2d 217 (2008), citing *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006).

[15] *Ante* at 12.

10

To arrive at its conclusion that a professional corporation is included in the NOI statute, the majority conflates common-law principles with its obligation to accurately construe this statute. It therefore emphasizes the unremarkable proposition of common-law vicarious liability that a corporation can only act through its officers and agents,[16] but ignores the equally unremarkable proposition that a corporation is a distinct legal entity.[17] The flaw in this analysis is that it imports common-law theories of liability to defeat the statutory enumeration of covered entities that does not include a professional corporation.[18] The Legislature is free to include and exclude any entity from the statutory notice procedure that it desires. By importing extra-textual theories of liability into this statutory procedural requirement, the majority deprives the Legislature of that option and renders surplusage portions of the statute the Legislature enacted.

---

[16] See *Mossman v Millenbach Motor Sales*, 284 Mich 562, 568; 280 NW 50 (1938), citing *Garey v Kelvinator Corp*, 279 Mich 174, 191; 271 NW 723 (1937).

[17] See *Bourne v Sanford*, 327 Mich 175, 191; 41 NW2d 515 (1950) ("[A corporation] is an artificial entity separate and distinct from the holders of its individual stock."), citing *Trustees of Dartmouth College v Woodward*, 17 US (4 Wheat) 518; 4 L Ed 629 (1819); *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984) ("We recognize the general principle that in Michigan separate entities will be respected.").

[18] Justice Markman makes the same error. See *post* at 8. Furthermore, my analysis is neither inconsistent with *Kuznar* and the tolling statute nor internally inconsistent. See *post* at 8 n 5. I emphasize that liability and procedure are distinct matters. Here, Huron's *liability* is provided by common law. See note 6 of this opinion. The pertinent *procedure* is provided by statute.

11

As stated, the majority holds that a professional corporation is a "health professional" because the term "professional corporation" appears in the accrual statute definition of "licensed health care provider." That definition, however, also includes any "other business entity." By the majority's logic, any "other business entity" is a "health professional." If that were true, then the terms "health facility" in the NOI statute and "licensed health facility or agency" in the accrual statute would be needless surplusage. For example, a hospital is listed in the PHC definition used to define "health facility" and "licensed health care facility or agency."[19] A hospital may be incorporated and, as such, is an "other business entity." Thus, under the majority's analysis, a hospital is, "for all practical purposes," a "licensed health care professional." The same is true for all other entities listed in the PHC definition of "licensed health facility or agency."[20] Because it renders the term "health facility" in the NOI statute needless surplusage, the majority's interpretation is erroneous.

Because a defendant Huron is neither a "health facility" nor a "health professional," I would hold that plaintiff was not required to serve it with an NOI

---

[19] See MCL 333.20106(1)(g); *Omelenchuk*, *supra* at 571 n 11; *Kuznar*, *supra* at 177-179.

[20] See MCL 333.20106(1).

12

before commencing a medical malpractice action against it.[21]  Thus, plaintiff's claim against defendant Huron was not subject to dismissal for a defective NOI.

## II. The Statute of Limitations For Plaintiff's Claim Against Defendant Huron Was Tolled Under MCL 600.5856(d).

This Court ordered supplemental briefing on "whether, if a defendant professional corporation is not an entity to whom notice is required to be provided under MCL 600.2912b, the applicable statute of limitations, MCL 600.5805(6), was nonetheless subject to statutory tolling provided in former MCL 600.5856(d)."[22]  If the statute of limitations was not tolled under former subsection (d) of the tolling statute, MCL 600.5856, then plaintiff's claim against defendant Huron was filed after the period of limitations expired and defendant Huron would be entitled to dismissal with prejudice.  I am persuaded that the statute of limitations for plaintiff's claim against Huron was tolled under former subsection (d).

---

[21] Justice Markman contends that my analysis is inconsistent with *Roberts I* and *Roberts II*.  *Post* at 9 n 5.  Justice Markman is certainly aware that no matter how thoughtful the opinion, we are, as a practical matter, incapable of resolving every potential issue that could conceivably arise in a case.  Neither the parties nor this Court raised the issue whether the professional corporation there was required to receive an NOI in *Roberts I* or *Roberts II*.  I prefer to base my analysis on issues that we did address rather than consider inferences from issues that we did not and were not asked to address.

[22] 483 Mich 922 (2009).

The tolling statute applicable here provided:[23]

> The statutes of limitations or repose are tolled:
>
> (a) At the time the complaint is filed and a copy of the summons and complaint are served on the defendant.
>
> (b) At the time jurisdiction over the defendant is otherwise acquired.
>
> (c) At the time the complaint is filed and a copy of the summons and complaint in good faith are placed in the hands of an officer for immediate service, but in this case the statute is not tolled longer than 90 days after the copy of the summons and complaint is received by the officer.
>
> (d) If, during the applicable notice period under section 2912b, *a claim* would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b. [Emphasis added.]

Plaintiff argues that because subsection (d) uses the indefinite article "a", not the definite article "the", it is not claim specific and, therefore, tolls all claims in the complaint. Defendant argues that tolling only applies for "a claim" to which "*the applicable* notice period under section 2912b" applies.

I believe that the dispositive question is "*what* is being tolled?" The first sentence of the tolling statute states that "[t]he statute*s* of limitations or repose *are* tolled." The plural form suggests that more than one statute of limitations can be tolled by each subsection, including subsection (d).

---

[23] The tolling statute was amended by 2004 PA 87, effective April 22, 2004.

14

By their nature, each of the other tolling provisions, § 5856(a) through (c), apply to all claims in a complaint, not just individual claims. Thus, the plural form in the prefatory clause is consistent with those provisions because they could involve multiple statutes of limitations.

Based on the prefatory provision, there is a strong textual argument that under subsection (d), "[t]he statutes of limitations . . . are tolled" for all claims in a complaint when "during the applicable notice period under section 2912b, *a claim* would be barred by the statute of limitations or repose." Thus, for example, in a complaint alleging a malpractice claim and a negligence claim, if the requirements of subsection (d) are met, the "statute*s* of limitations . . . *are* tolled" for both claims. I believe that this is the superior textual argument.

Although the prefatory clause does not specify which statutes of limitations are tolled, there is no textual basis for restricting tolling to a single claim.[24] Subsection (d) only requires "a claim" to be barred during the notice period and

---

[24] Justice Markman misconstrues my analysis. I do not suggest that more than one statute of limitations is *always* tolled. *Post* at 20. Certainly, if there is only one claim, then only one statute of limitations is tolled. Nor do I suggest that "all claims against all defendants in Michigan" are tolled by a single sufficient NOI as to a single defendant. *Post* at 23 n 16. Hyperbole aside, I believe that there is simply no textual basis for treating subsection (d) of the tolling statute different than subsection (a) through (c) of the tolling statute. The Legislature is perfectly capable of providing such a basis for distinction; see my discussion of subsection (c) of the tolling statute as amended by 2004 PA 87 below.

15

notice to be given in compliance with the NOI statute; the prefatory clause provides that multiple statutes are tolled as a result.[25]

I note that the current tolling provision is more precise on this issue. MCL 600.5856(c) provides:

> The statutes of limitations or repose are tolled in any of the following circumstances:
>
> * * *
>
> (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, *the statute is tolled* not longer than the number of days

---

[25] I agree with Justice Markman that "the notice of intent must contain all of the statements required by § 2912b(4) as to '*each* particular [defendant] named in the notice.'" *Post* at 21, quoting *Roberts II*, *supra* at 692. Because a plaintiff is statutorily prohibited from commencing a medical malpractice action without first giving the notice required under the NOI statute, dismissal is appropriate when a plaintiff fails to give such notice. See MCL 600.2912b(1); *Burton v Reed City Hosp Corp*, 471 Mich 745, 753; 691 NW2d 424 (2005) (holding that "dismissal is an appropriate remedy for noncompliance with the notice provisions" of the NOI statute). Thus, contrary to Justice Markman's concern that my analysis would deprive defendants the notice that the statutory procedure is designed to provide, *post* at 24-25, a plaintiff's failure to provide a defendant with a sufficient NOI still entitles that defendant to dismissal, tolling notwithstanding.

Justice Markman suggests that I create a "trap for unwary plaintiffs." *Post* at 19. Admittedly, a plaintiff will be unable to re-file *some* claims—specifically, those for which an NOI is required. However, as I discussed above, a professional corporation that is not a "health facility" is not entitled to notice; thus, a defective NOI is inconsequential for such a defendant. Moreover, if that claim is dismissed, tolling afforded by subsection (d) of the tolling statute is not rendered moot because the plaintiff will not need to wait the notice period to re-file his complaint. It is for this reason that my interpretation does not create an irreconcilable conflict with MCL 600.2912b(6).

equal to the number of days remaining in the applicable notice period after the date notice is given.  [Emphasis added.]

As indicated by the highlighted text, the significant distinction between current subsection (c) and former subsection (d) is that the current provision restates what is tolled ("the statute"), which specifies that tolling is limited to only one statute while the former provision remained unlimited by the prefatory clause ("The statutes").  Thus, current subsection (c) is expressly claim specific and only tolls "*the* statute" for the previously referenced claim that would be barred.[26]

Here, plaintiff's NOI was sufficient as to co-defendant Murry.[27]  Subsection (d) applied to plaintiff's claim against Murry because the period of limitations

---

[26] Justice Markman correctly states that under my analysis of who must receive an NOI and my interpretation of current subsection (c) of the tolling statute, "the plaintiff would have to file his medical malpractice action against the professional corporation before he filed a medical malpractice action against the physician, if the period of limitations would have expired within 182 days after the plaintiff served his notice of intent on the physician." *Post* at 22 n 12.  Although this procedure seems unusual, we are without authority to question the wisdom of the Legislature and "fix" perceived problems.  See *State Tax Law Cases*, 54 Mich 350, 360; 20 NW 493 (1884) ("[W]e have no supervisory power in respect to legislation; . . . the law-making power is not responsible to the judiciary for the wisdom of its acts, and . . . , however unwise or impolitic their acts may appear, they must stand as law unless the legislature has plainly overstepped its constitutional authority . . . .").  Moreover, a plaintiff is not prohibited from bringing an action against the principal without naming the agent, *Krolik v Curry*, 148 Mich 214, 223; 111 NW 761 (1907); *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294; 731 NW2d 29 (2007); 3 Am Jur 2d, Agency, § 333, p 699, and I fully expect that such actions would be consolidated, see MCR 2.505(A)(2), if the action against the agent proceeds after the notice procedure.

[27] See *Potter v McLeary (On Remand)*, 278 Mich App 279; 748 NW2d 599 (2008).

17

would have expired during the notice period if the statute of limitations was not tolled. Thus, "notice [was] given in compliance with section 2912b" for "a claim" that "would [have been] barred by the statute of limitations," so "[t]he statutes of limitations . . . [were] tolled." Accordingly, I would reverse the Court of Appeals and hold that defendant Huron was not entitled to dismissal.

### III. Plaintiff's NOI Was Deficient.

I join part III(E) of Justice Markman's dissent[28] regarding the majority's decision to address and resolve an issue that the parties were specifically directed not to address. The majority has deprived the parties of an opportunity to brief and argue the merits of the sufficiency of plaintiff's NOI. As such, the majority's action suggests that parties should follow our grant orders at their peril. No serious court should function in this fashion.

Although not properly before this Court nor pertinent to my analysis, I address the majority's analysis that plaintiff's NOI was not deficient because it will likely affect how lower courts evaluate an NOI. I believe that plaintiff's NOI was deficient and the majority's analysis is no more than a shallow gloss over the statutory text.

As stated, a plaintiff must serve an NOI before commencing a medical malpractice action against a health facility or health professional.[29] In subsection

---

[28] Specifically, *post* at 28-30 and nn 22 & 23. I also join *post* at 4 n 1.

[29] MCL 600.2912b(1).

(4) of the NOI statute, the Legislature has enumerated six specific topics that the plaintiff must address in his NOI:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

"Subsections 2912b(1) and (4) clearly place the burden of complying with the notice of intent requirements on the plaintiff."[30]

In *Roberts II*, this Court established the standard for whether an NOI complied with the statutory requirements of subsection (4) of the NOI statute: "the claimant is required to make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized*

---

[30] *Roberts I*, *supra* at 66.

19

as is consistent with the early stages of the proceedings."[31] An NOI that does not meet this standard is deficient.

Subsection (a) requires the plaintiff to provide a statement of "[t]he factual basis for the claim." Here, plaintiff has alleged that defendant Huron is vicariously liable for the acts of its agent, defendants Murry, Dr. Richard D. McLeary, and Dr. Gary Augustyn. Thus, "the claim" is vicarious liability. An essential factual predicate for plaintiff's vicarious liability claim is that the individual defendants were defendant Huron's employees. Nowhere in the notice does plaintiff suggest that any employer-employee (or other principal-agent relationship) existed between the defendants.[32] Because plaintiff omitted "[t]he factual basis for the claim," he failed to meet the *Roberts II* standard and, therefore, the NOI is deficient.

The majority holds that there is "no language in [subsection (4) of the NOI statute] that requires a claimant to set forth the nature of the relationship between the parties to be sued."[33] To support its conclusion, the majority states that no

---

[31] *Roberts II*, *supra* at 701.

[32] As this Court stated in *Roberts II*, "the claimant is not required to craft her notice with omniscience." *Id.* at 691. All that was required of plaintiff was a good-faith averment of the relationship that served as the factual basis for his vicarious liability claim, *Roberts II*, *supra* at 701; the claimant was not required to know the precise employment relationship between the defendants. See *ante* at 22 n 29.

[33] *Ante* at 22.

20

such requirement is found in subsection (f).[34]  That is true, but no more sufficient than stating that no such requirement is found in subsection (e).  The majority offers no discussion of subsection (a)—"The factual basis for the claim"—and why a principal-agent relationship is not part of the factual basis of plaintiff's vicarious liability claim.  The majority proclaims that it is not "necessary to plead facts supporting vicarious liability."[35]  As stated, here, "the claim" is vicarious liability.  Thus, the majority has proudly announced that it is not necessary to state the factual basis for the claim.[36]  This is most likely a relief to plaintiffs and a shock to the Legislature and anyone who has read the NOI statute since it was

---

[34] *Ante* at 22.

[35] *Ante* at 23 n 30.  I do not contend that the plaintiff must "state the phrase 'vicarious liability.'"  *Ante* at 23 n 30.  That is a legal theory.  Rather, plaintiff must state "[t]he factual basis for the claim."  MCL 600.2912b(4)(a).

[36] The majority asserts that subsection (4) of the NOI statute does not require a plaintiff to state facts supporting a vicarious liability claim because the majority has managed to conjure up a way that the Legislature "could have" phrased subsection (4) of the NOI statute.  *Ante* at 23 n 30.  The Legislature is not required to place the judiciary in checkmate when enacting its policy choices.  Rather, it is *our obligation* to "to discern and give effect to the intent of the Legislature . . . by examining the language of the statute itself [because the] words of a statute provide 'the most reliable evidence of its intent . . . .'"  *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).  The majority offers no discussion of the meaning of the words actually enacted in subsection (a).  Nor does the majority state why an agent-principal relationship is not part of "[t]he factual basis" for plaintiff's vicarious liability claim.  The majority reaches its desired result using this faulty analysis and does so mindless of the consequences of its rule by fiat.

enacted. The majority cannot square its analysis with the text of the relevant statute, so it does not attempt such folly.

The majority buttresses its conclusion with its assessment of defendant Huron's subjective knowledge: "Certainly they are fully aware of the legal relationship between them."[37] The majority's reliance on the knowledge of *this* defendant is not a relevant assessment of what the Legislature has required a plaintiff to provide in its NOI.

This Court previously rejected such a construction of subsection (4) of the NOI statute for an obvious reason: it would render the statutory notice procedure completely nugatory.[38] The NOI statute, in plain and unambiguous terms, places the burden on the plaintiff to provide "written notice under this section"[39] that "contain[s] a statement"[40] of six specific topics. Thus, the Legislature has not required that the defendant "fill in the blanks." Undeterred, the majority replaces the legislative standards with its own requirement and creates a slippery slope in which the plaintiff complies with the NOI statute by simply declaring "I went to

---

[37] *Ante* at 22.

[38] See *Roberts II*, *supra* at 696 n 14.

[39] See MCL 600.2912b(1), which provides that "a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced."

[40] MCL 600.2912b(4).

22

the doctor and something bad happened."[41] Under the majority's analysis, the burden is on the defendant to fill in the remainder of the missing but required NOI information.

The majority fails to comprehend the significance of its decision. Our decisions do not resolve only the case before us, but rather, all cases subsequently filed in Michigan raising similar issues; we are obligated to ensure that all cases are resolved in a manner that is consistent with the text of the applicable statute.[42] Consider, for example, a corporate defendant that never employed or worked with any of the other individual defendants listed—one that is named in the NOI through mistake or error. How does an NOI that fails to allege any relationship between the corporate defendant and the individual defendants inform that defendant of the factual basis for the claim against it? The majority's analysis threatens to deprive a named defendant of the notice that the statutory procedure is designed to provide.

The justification that a particular defendant might have knowledge about data the plaintiff is statutorily obligated to supply is just a fancy way for the

---

[41] *Roberts II*, *supra* at 697 n 15.

[42] See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 66; 718 NW2d 784 (2006), citing *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803) for the fundamental proposition that "ours is to declare what the law is, not what it ought to be."

majority to subvert a statute it does not like. At the very least, the majority is not pretending any longer to enforce the plain language of the NOI statute.

The majority's lack of concern for the implications of its discussion is illustrated by its treatment of *Roberts II*. The majority purports to leave for another day the question whether *Roberts II* was correctly decided.[43]

---

[43] *Ante* at 25 n 32. It is quickly becoming a new favored practice of the majority to flag decisions of the past decade and invite challenges to those decisions. See *Bush v Shabahang*, 484 Mich ___, ___; ___ NW2d ___ (2009), decided July 29, 2009 (Docket Nos. 136617, 136653, and 136983), slip op at 19 n 34. It is difficult to reconcile this practice with the majority's previous claims of fidelity to stare decisis. See, e.g., *People v Gardner*, 482 Mich 41, 87; 753 NW2d 78 (2008) (Kelly, J., dissenting) ("Our decision about whether an earlier case must be overruled should be guided by more than a notion that the case was incorrectly decided."); *Pohutski v City of Allen Park*, 465 Mich 675, 712; 614 NW2d 219 (2002) (Kelly, J., dissenting) ("[I]f each successive Court, believing its reading is correct and past readings wrong, rejects precedent, then the law will fluctuate from year to year, rendering our jurisprudence dangerously unstable."); *Devillers*, *supra* at 620 (Weaver, J., dissenting) ("Under the doctrine of stare decisis, it is necessary to follow earlier judicial decisions when the same points arise again in litigation."); *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 278; 731 NW2d 41 (2007) (Cavanagh, J., dissenting) ("Under the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction become precedent and should not be lightly departed. Absent the rarest circumstances, we should remain faithful to established precedent."); *People v Hawkins*, 468 Mich 488, 517-518; 668 NW2d 602 (2003) (Cavanagh, J., dissenting) ("We have overruled precedents when the intervening developments of the law has 'removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies.' Absent those changes or compelling evidence bearing on Congress' original intent, our system demands that we adhere to our prior interpretations of statutes."), quoting *Patterson v McLean Credit Union*, 491 US 164, 173; 109 S Ct 2363; 105 L Ed 2d 132 (1989). See also Todd C. Berg, Esq., *Hathaway Attacks*, Michigan Lawyers Weekly, October 27, 2008, in which Justice Hathaway was quoted: "I believe in stare decisis. Something must be drastically wrong for the court to overrule"; *Lawyers' Election Guide: Judge Diane Marie Hathaway*, Michigan Lawyers Weekly, October 30, 2006, in

24

Nevertheless, it states that "the issue is whether [Huron] could reasonably be held to comprehend the nature of the claims being asserted against it."[44] That standard is distinctly *not* the *Roberts II* standard set out above. Indeed, that standard is similar to the standard articulated by the *dissent* in *Roberts II*: "The statement simply must provide notice of a potential claim sufficient to allow potential defendants to ascertain the basis for the claim and enter into settlement discussions."[45] Once again, such a view is inconsistent with the statutory text.

> This continues a disturbing trend in which the majority

> overrules by indirection, or at least leaves the impression that it is doing so, thereby sowing the seeds of confusion and making it difficult for the citizens of this state to comprehend precisely what our caselaw requires. This appears to be an unfortunate return to our predecessors' past practice of "frequently pa[ying] little attention to the inconsistencies among its cases and declin[ing] to reduce confusion in [the Court's] jurisprudence by overruling conflicting decisions."[46]

## IV. Conclusion

I do not believe that defendant Huron is a "health professional" or "health facility" entitled to notice under the NOI statute and, therefore, plaintiff was not

---

which Justice Hathaway, then running for a position on the Court of Appeals, was quoted: "Too many appellate decisions are being decided by judicial activists who are overturning precedent."

[44] *Ante* at 26.

[45] *Roberts II*, *supra* at 713-714 (Kelly, J., dissenting).

[46] *Beasley v Michigan*, 483 Mich 1025, 1030 (2009) (Corrigan, J., dissenting), quoting *Devillers*, *supra* at 571 n 19.

required to serve defendant Huron with an NOI. I also believe that plaintiff's claim against defendant Huron was tolled pursuant to subsection (d) of the tolling statute. Accordingly, I would reverse the Court of Appeals and hold that defendant Huron is not entitled to dismissal because of plaintiff's defective NOI.

Robert P. Young, Jr.

S T A T E   O F   M I C H I G A N

SUPREME COURT

BRIAN POTTER,

      Plaintiff-Appellant,

v                                                No. 136336

RICHARD C. McLEARY, M.D., GARY
AUGUSTYN, M.D., ST. JOSEPH MERCY
HOSPITAL ANN ARBOR, d/b/a TRINITY
HEALTH-MICHIGAN, ROBERT
DOMEIER, D.O., and EMERGENCY
PHYSICIANS MEDICAL GROUP, P.C.,

      Defendants,

and

KRISTYN H. MURRY, M.D. and HURON
VALLEY RADIOLOGY, P.C.,

      Defendants-Appellees.

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

I agree with the majority that plaintiff's notice of intent was sufficient with regard to defendant Kristyn Murry and that defendant Huron Valley Radiology, P.C. (HVR) was entitled to a notice of intent. However, I disagree that the notice of intent was sufficient with regard to HVR. The notice of intent did not contain a statement of "[t]he applicable standard of practice or care alleged by the claimant" with regard to HVR, as is required by MCL 600.2912b(4)(b). As this Court

explained in *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 693-694; 684 NW2d 711 (2004) (*Roberts II*), a notice of intent must include a "particularized standard for each of the professionals and facilities named in the notices," which necessarily must indicate "whether plaintiff [is] alleging that [the] defendants were vicariously or directly liable to [the plaintiff]." Because the notice of intent here did not include such a statement, it was clearly defective with regard to HVR.

We held in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57; 642 NW2d 663 (2002) (*Roberts I*), that a defective notice of intent does not toll the statute of limitations. Because the period of limitations in a medical malpractice action is two years, MCL 600.5805(6), and because the alleged malpractice in this case occurred on June 7, 2001 and the complaint was not filed until November 4, 2003, the complaint was untimely filed, and thus the action against HVR is barred by the statute of limitations. I would affirm the portions of the Court of Appeals opinion that held that the notice of intent was sufficient as to defendant Murry and insufficient as to defendant HVR, but reverse the portions of that opinion that held that the defective notice of intent tolled the statute of limitations and, thus, that a dismissal without prejudice was appropriate. The action against HVR should be dismissed with prejudice.

## I. FACTS AND HISTORY

The alleged medical malpractice occurred on June 7, 2001. Plaintiff alleges that Murry, a radiologist working for HVR, "failed to properly interpret and report

2

back the true and correct results of the MRI . . . ." He further alleges "[t]hat as a result of the . . . delay in surgical [intervention, he] has suffered permanent neurologic injury and deficit." On May 30, 2003, just eight days before the expiration of the two-year period of limitations, plaintiff served defendants Murry and HVR with a notice of intent to file suit. On November 4, 2003, plaintiff filed his medical malpractice complaint against defendants.

The trial court denied defendants' motion for summary disposition. The Court of Appeals reversed, concluding that because plaintiff's affidavits of merit were defective, the complaint had to be dismissed with prejudice. *Potter v McLeary*, 274 Mich App 222; 732 NW2d 600 (2007). This Court reversed "the portion of the judgment of the Court of Appeals dismissing the complaint *with* prejudice, because the dismissal should have been *without* prejudice as to the affidavit of merit issue." *Potter v McLeary*, 480 Mich 915 (2007) (emphasis in the original). We remanded to the Court of Appeals for consideration of defendants' remaining issues. On remand, the Court of Appeals held that plaintiff's notice of intent was sufficient as to defendant Murry, but insufficient as to defendant HVR. However, the Court of Appeals held that the defective notice of intent tolled the statute of limitations, and thus dismissed without prejudice as to HVR. *Potter v McLeary*, 278 Mich App 279; 748 NW2d 599 (2008).

In Docket No. 136336, plaintiff appealed the portion of the Court of Appeals decision that held that the notice of intent was defective as to HVR, and in Docket Nos. 136338 and 136339, defendants appealed the portion of the Court

3

of Appeals decision that held that the defective notice of intent tolled the statute of limitations, and, thus, that a dismissal without prejudice was appropriate, and the portion that held that the notice of intent was sufficient as to defendant Murry. In Docket No. 136336, we granted plaintiff's application "limited to the issue whether defendant Huron Valley Radiology, P.C., is a 'health facility or agency' to which a plaintiff is required to provide notice under MCL 600.2912b(1)." 482 Mich 1004 (2008). In Docket Nos. 136338 and 136339, we held defendants' application for leave to appeal in abeyance pending the decision in Docket No. 136336. 756 NW2d 85 (2008).[1] Subsequently, in Docket No. 136336, we

---

[1] Despite this abeyance, and despite the fact that the parties have not been given an opportunity to brief or argue the issues raised in defendants' application for leave to appeal (Docket Nos. 136338 and 136339), or even, given this Court's limited grant order, the issue raised in plaintiff's application for leave to appeal (the sufficiency of the notice of intent as to HVR), the majority addresses the issue raised in plaintiff's application and one of the issues raised in defendants' application (the sufficiency of the notice of intent as to Murry), and then announces that it is now denying defendants' application. Only because the majority addresses these issues in its opinion today do I also address these. Contrary to the majority's contention, *ante* at 8, neither one of the parties argued the sufficiency of the notice of intent in their briefs filed after this Court granted plaintiff's application limited to a different issue, and only the plaintiff briefly raised the sufficiency issue at oral arguments; defendant did not say anything at all regarding the issue (which was to be expected given that this Court had not granted leave on that issue). The majority contends that "[d]efendant [HVR] addressed the sufficiency of the NOI issue extensively in its brief on appeal." *Ante* at 8 n 8. However, page one of defendant's brief states, "This brief concerns the singular issue of whether Appellee, HVR, is entitled to pre-suit notice pursuant to MCL 600.2912b(1)." The only mention thereafter regarding the sufficiency issue is in the "procedural history" section in which defendant describes its bases for its motion for summary disposition. There is no discussion of the sufficiency issue in defendant's "Argument" section of its brief. Finally, contrary to the majority's contention, *ante* at 9 n 8, defendant's prayer for relief does not "ask[] us

4

directed the parties to file supplemental briefs addressing "whether, if a defendant professional corporation is not an entity to whom notice is required to be provided under MCL 600.2912b, the applicable statute of limitations, MCL 600.5805(6), was nonetheless subject to statutory tolling provided in former MCL 600.5856(d)." 483 Mich 922 (2009).

## II. STANDARD OF REVIEW

"Questions of statutory interpretation are questions of law that this Court reviews de novo." *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). A trial court's determination regarding a motion for summary disposition is also reviewed de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).

## III. ANALYSIS

### A. Notice of Intent

I agree with the majority that HVR was entitled to a notice of intent. The majority concludes that HVR was entitled to a notice of intent because "the action is one sounding in medical malpractice." *Ante* at 3. Although I agree that the action here is "one sounding in medical malpractice," this is only the first step in the analysis to determine whether a notice of intent was required.

MCL 600.2912b(1) provides:

---

to decide the remaining issues in plaintiff's application for leave to appeal." Instead, defendant expressly states that "Plaintiff-Appellant's Application For Leave To Appeal should be denied."

5

Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

Because § 2912b(1) only applies to an "action alleging medical malpractice," the majority is correct that "the first step in the analysis" is to determine whether the action is one "alleging medical malpractice." *Ante* at 14. It is undisputed that the action at issue here is such an action, because it "allege[s] an action that (1) occurred within the course of a professional relationship and (2) poses questions of medical judgment outside the realm of common knowledge and experience." *Kuznar v Raksha Corp*, 481 Mich 169, 176-177; 750 NW2d 121 (2008), citing *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 422; 684 NW2d 864 (2004).[2]

However, despite the majority's initial recognition that whether this action is one "alleging medical malpractice" is only the "first step in the analysis" in determining whether a notice of intent was required, *ante* at 14, the majority does not address the second step. Rather, it concludes that "[b]ecause § 2912b(1) clearly requires a claimant to provide a timely NOI before commencing a medical

_____

[2] In the instant case, the services provided were unquestionably professional services rendered by a licensed health care professional, i.e., a radiologist, and thus the claims at issue here allege an action that occurred in the course of a professional relationship. I agree with Justice Young that HVR is "subject to medical malpractice liability because a principal sued for the medical malpractice of its agent is sued in medical malpractice." *Ante* at 4 n 5.

6

malpractice action, plaintiff was required to provide this PC with a timely NOI." *Ante* at 20. However, § 2912b(1) requires a notice of intent only if: (a) the action is one "alleging medical malpractice"; *and* (b) the defendant is a "health professional or health facility." Despite this clear language, the majority does not address whether HVR is a "health professional or health facility."[3]

Nevertheless, I believe that HVR is a "health professional" for the purposes of § 2912b. I reach this conclusion on the basis that plaintiff is seeking to hold HVR vicariously liable for its employee's alleged malpractice and such employee is unquestionably a "health professional." In *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002), this Court explained that under the principle of vicarious liability, "the principal 'is only liable because the law creates a practical identity with his [agents] . . . .'" (Citation omitted.) Subsequently, in *Nippa v Botsford Gen Hosp (On Remand)*, 257 Mich App 387, 391-392; 668 NW2d 628 (2003), on remand from this Court for reconsideration in light of *Cox*, the Court of Appeals explained:

> For all practical purposes the hospital stands in the shoes of its agents (the doctors).

---

[3] I agree with Justice Young, *ante* at 9, 12, that the majority errs in concluding that HVR is entitled to a notice of intent simply because the words "professional corporation" can be found in MCL 600.5838a. I also agree with him, *ante* at 6, that HVR is not a "health facility" because it is not a clinical laboratory, a hospital, a nursing home, or any other type of facility listed in MCL 333.20106(1).

7

Thus, we opine that with regard to vicarious liability, medical-malpractice law applicable to a physician is also applicable to the physician's hospital. . . . All procedural requirements are applicable to the hospital in the same manner and form as [they are to] the doctor . . . . This is so because the law creates a practical identity between a principal and an agent . . . .

. . . Vicarious liability imposes a legal fiction on defendant hospital providing that the principal is only liable because the law creates a practical identity with its agents . . . . The law treats the principal and the agent as sharing a single identity . . . .[4]

Because, with regard to vicarious liability, "[t]he law treats the principal and the agent as sharing a single identity," and because, in the instant case, plaintiff is seeking to hold HVR vicariously liable for its employee's alleged malpractice, and because such employee is unquestionably a "health professional" entitled to a notice of intent, the law treats HVR as also being a "health professional" entitled to a notice of intent.[5] Therefore, plaintiff was required to provide a notice of

_____

[4] After the Court of Appeals rendered its decision on remand from this Court, this Court denied leave to appeal. 469 Mich 1005 (2004).

[5] Justice Young concludes that the action against HVR is a medical malpractice action because plaintiff is seeking to hold HVR vicariously liable for the actions of one of its employees who is a health professional, but then overlooks vicarious liability in terms of determining whether HVR is entitled to a notice of intent. Because a medical malpractice action can only be brought against "'a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency' who is engaging in or otherwise assisting in medical care and treatment," *Kuznar*, 481 Mich at 177, quoting in part MCL 600.5838a(1), either Justice Young's position is inconsistent with *Kuznar* and § 5838a(1) or it is internally inconsistent. That is, pursuant to *Kuznar*, Justice Young must determine that HVR is a "health professional" in order to conclude that this is a medical malpractice action; however, if he were to determine that HVR *is* a "health professional" for purposes of concluding that HVR can be sued for medical malpractice, he could not then also determine that HVR is *not* a

8

intent to HVR before commencing a medical malpractice action in accordance with § 2912b.

### B. Sufficiency

As discussed above, § 2912b(1) provides, "a person *shall not* commence an action alleging medical malpractice against a health professional or health facility *unless* the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." (Emphasis added.) MCL 600.2912b(4) provides:

> The notice given to a health professional or health facility under this section *shall* contain a statement of at least *all* of the following:

---

"health professional" for purposes of concluding that HVR is not entitled to a notice of intent. It simply cannot be both ways. If HVR is subject to a medical malpractice action on the basis of vicarious liability, HVR is entitled to a notice of intent on the basis of vicarious liability. Contrary to Justice Young's contention, *ante* at 9, concluding that HVR is a "health professional" for purposes of § 2912b because plaintiff is seeking to hold HVR vicariously liable for the actions of one of its employees who is unquestionably a "health professional," is not inconsistent with *Kuznar*'s conclusion that the defendant pharmacy in that case was not a "health professional" because in *Kuznar* the plaintiff was seeking to hold the pharmacy vicariously liable for the actions of one of its employees who was unquestionably *not* a "health professional." That is, *Kuznar* did not involve the kind of case that we are dealing with here, in which the plaintiff is seeking to hold the defendant vicariously liable for the actions of its employee, who *is* unquestionably a "health professional." Indeed, Justice Young's position is inconsistent with prior caselaw. See, for example, *Roberts I*, 466 Mich at 59, and *Roberts II*, 470 Mich at 693, in which this Court held (in thoughtful opinions authored by Justice Young) that because the plaintiff's notice of intent was defective as to the professional corporation, the statute of limitations was not tolled. Why would it matter that the notice of intent was defective as to the professional corporation if a professional corporation is never entitled to a notice of intent in the first place?

9

(a) The factual basis for the claim.

(b) *The applicable standard of practice or care alleged by the claimant.*

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim. [Emphasis added.]

In *Roberts II*, 470 Mich at 700-701, this Court explained:

Under MCL 600.2912b(4), a medical malpractice claimant is required to provide potential defendants with notice that includes a "statement" of each of the statutorily enumerated categories of information. Although it is reasonable to expect that some of the particulars of the information supplied by the claimant will evolve as discovery and litigation proceed, the claimant is required to . . . provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings. . . . This is not an onerous task: all the claimant must do is specify what it is that she is *claiming* under each of the enumerated categories in § 2912b(4). Although there is no one method or format in which a claimant must set forth the required information, that information must, nevertheless, be specifically identified in an ascertainable manner within the notice. [Emphasis in the original.]

In *Roberts II*, the plaintiff brought a medical malpractice action against a hospital, a professional corporation, an obstetrician, a physician's assistant, and an emergency room physician. This Court held that the plaintiff must "aver the

10

specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice." *Id.* at 692 (emphasis in the original). Because the notice of intent "fail[ed] to indicate whether plaintiff was alleging that these defendants [the hospital and professional corporation] were vicariously or directly liable to her," the plaintiff's notice of intent failed to allege "a standard specifically applicable to the defendant facilities . . . ." *Id.* at 693. For this reason, *Roberts II* held that the notice of intent was insufficient as to the defendant hospital and the defendant professional corporation.

In the instant case, the Court of Appeals similarly held that the notice of intent was insufficient as to HVR because it did not state the applicable standard of practice or care as is required by § 2912b(4)(b).[6] I agree. The notice of intent completely fails to indicate what standard of practice or care plaintiff believes is applicable to defendant HVR, and it does not indicate whether plaintiff is alleging that defendant HVR is directly or vicariously liable to him. Indeed, as the Court of Appeals held, "The standard of care completely fails to make any reference to

---

[6] Defendant Murry argues that the notice of intent does not satisfy the requirements set forth in § 2912b(4)(b)-(d). Although I agree with the majority that the notice of intent is sufficient as to defendant Murry, I cannot say that I agree with the majority's analysis because it provides none. In my judgment, the notice of intent does satisfy § 2912b(4)(b) because it states, "The standard of care required Dr.[] Murry . . . to correctly read, interpret and report the correct results to the emergency room under the circumstances." In addition, the notice of intent does satisfy § 2912b(4)(c) and (d) because it states that defendant Murry "failed to properly interpret the MRI images and convey accurate information to the emergency room physicians in charge of the patient that night."

11

defendant Huron Valley Radiology." *Potter*, 278 Mich App at 284. In fact, the notice of intent as a whole only references HVR twice: once on the first page where it lists the health care professionals and entities to whom the notice of intent is intended to apply, and then again on the last page, where it lists the health care professionals and entities being notified of the action. Because the notice of intent does not contain a statement indicating what standard of practice or care is allegedly applicable to HVR, as is required by § 2912b(4)(b), I agree with the Court of Appeals that the notice of intent is insufficient as to defendant HVR.

Although the majority "question[s] whether *Roberts II* was correctly decided," *ante* at 25 n 32,[7] it does not expressly overrule *Roberts II* because it concludes that this decision is not "dispositive." It is not dispositive, says the majority, because "*Roberts II* opined that because there was confusion with regard to whether the claim was for direct or vicarious liability, the PC was unable to understand the nature of the claims being asserted," but, "[i]n the case before us,

---

[7] Specifically, the majority "question[s] whether *Roberts II* was correctly decided because it adds a requirement not found in the language of the statute; namely, that statements be 'particularized.'" *Ante* at 25 n 32. Despite the fact then that § 2912b(1) clearly requires a notice of intent to be sent to each defendant, and § 2912b(4) clearly requires the notice of intent to contain certain statements, the majority apparently would prefer to conclude that the notice of intent is not required to contain each of these statements as to each defendant. For example, the majority apparently would hold that if a plaintiff sues both a nurse and a physician for their own direct malpractice, as long as the notice of intent contains the required "applicable standard of practice or care statement" as to the nurse, the notice would be sufficient as to the physician as well. Fortunately, the majority leaves this issue for another day, one that hopefully will not arrive soon.

12

no such potential for confusion exists . . . ." *Ante* at 25 n 33. First, that is not what *Roberts II* held; rather, it held, 470 Mich at 693, 702, that because the plaintiff's notice of intent did not include a statement "indicat[ing] whether plaintiff was alleging that these defendants were vicariously or directly liable to her," "plaintiff did not fulfill her obligation under § 2912b . . . ." Second, as with *Roberts II*, a "potential for confusion," *ante* at 25 n 32, *does* exist here because HVR could be sued on the basis of either direct or vicarious liability, or both, and the notice of intent does not indicate on which basis plaintiff intended to sue HVR.

Furthermore, that *Roberts II* involved a situation in which the notice of intent may have implied that the plaintiff was seeking to hold the defendants directly liable, while the complaint implied that the plaintiff was seeking to hold the defendants vicariously liable, whereas in the instant case nothing can be implied from plaintiff's notice of intent regarding direct or vicarious liability, while the complaint seeks to hold HVR vicariously liable, is a distinction utterly without any significance in this case. The issue here is whether the *notice of intent* was sufficient as to HVR. Being a professional corporation, HVR could be sued on the basis of either direct liability or vicarious liability. See *Cox*, 467 Mich at 11, stating that "[a] hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents." MCL 600.2912b(4)(b) requires the notice of intent to contain a statement of "[t]he applicable standard of practice or care alleged by the claimant." Obviously, the

13

"applicable standard of practice or care" would depend on whether the claimant is suing the professional corporation on the basis of direct liability or vicarious liability. Accordingly, a notice of intent must indicate whether the claimant is suing the professional corporation on the basis of direct liability, vicarious liability, or both.

The majority holds that "when vicarious liability is the only claim asserted," it is unnecessary to "specifically set forth the legal theory of vicarious liability within the NOI." *Ante* at 23. However, if the notice of intent does not indicate that the plaintiff is planning on suing the defendant professional corporation on the basis of vicarious liability, how will the defendant know that "vicarious liability is the only claim asserted"? The majority fails to recognize that the whole point of the exercise of a notice of intent is to apprise the defendant of the claims that the plaintiff plans to bring *before* a complaint is filed. Here, because the notice of intent was silent on the subject, HVR did not know until plaintiff filed his complaint that plaintiff was suing on the basis of vicarious liability. That is, HVR did not know what "standard of practice or care" plaintiff was alleging that HVR breached until plaintiff filed his complaint against HVR. This is most clearly a violation of § 2912b(4)(b).[8]

---

[8] The majority concludes that HVR's claim that plaintiff's notice of intent was defective because it did not indicate whether plaintiff was planning on suing HVR on the basis of direct or vicarious liability is "troubling" because HVR "openly admits knowing and understanding that it is vicariously liable for the actions of its employee, Dr. Murry." *Ante* at 24. What I find to be "troubling"

14

The majority misunderstands the issue. Contrary to its contention, *ante* at 26, the issue is not whether HVR "could reasonably be held to comprehend the nature of the claims being asserted against it." Instead, as Justice Young explains, *ante* at 19, the issue is whether the notice of intent "provide[s] details that are *responsive* to the information sought by the statute . . . ." *Roberts II*, 470 Mich at 701 (emphasis in the original). More specifically, the issue here is whether the notice of intent contains a statement of "[t]he applicable standard of practice or care alleged by the claimant," as is required by § 2912b(4)(b). *Boodt v Borgess Med Ctr*, 481 Mich 558, 560-561; 751 NW2d 44 (2008) ("Although the instant notice of intent may conceivably have apprised [defendant] of the nature and gravamen of plaintiff's allegations, this is not the statutory standard; § 2912b(4)[b] requires something more."). Because the notice of intent at issue here did not contain a statement of the "applicable standard of practice or care" with regard to HVR, the notice of intent did not comply with § 2912b(4)(b).[9]

instead is that the majority ignores the significant distinction between (a) knowing and understanding that a professional corporation *may* be held vicariously liable for the actions of its employees; and (b) knowing and understanding that someone is planning on bringing a cause of action against the professional corporation to hold that corporation vicariously liable for the actions of its employees. The majority erroneously equates knowledge of potential liability with knowledge of an imminent lawsuit.

[9] Although neither the parties nor the lower courts addressed this issue, the majority concludes that § 2912b does not "require[] a claimant to set forth the nature of the relationship between the parties to be sued." *Ante* at 22. While I agree with the majority, *ante* at 22 n 28, that the notice need not allege the "precise nature of the relationship," i.e., whether there is an "actual employment

15

C. Tolling

The period of limitations in medical malpractice cases is two years. MCL 600.5805(6). At the time the complaint was filed in this case, MCL 600.5856, in pertinent part, provided:

> The statutes of limitations or repose are tolled:
>
> * * *
>
> (d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given *in compliance with section 2912b*. [Emphasis added.][10]

relationship with the PC or . . . a complex independent contractor arrangement," the majority fails to recognize that § 2912b(4)(a) *does* require the notice of intent to contain a statement of the "factual basis for the claim." In this case, plaintiff sued multiple physicians, multiple professional corporations, and a hospital. Yet, plaintiff's notice of intent nowhere includes a "factual basis for the claim" against HVR. That is, the notice of intent does not even indicate that the reason that HVR is being sued is because HVR is where Murry was working at during the time of the alleged malpractice. Because § 2912b(4)(a) requires the notice of intent to include the "factual basis for the claim," and the notice of intent at issue here did not include the fact that Murry was working at HVR at the time of the alleged malpractice, which, indeed, is one of the most important facts in a case in which the claim is based on vicarious liability, I also agree with Justice Young, *ante* at 20, that plaintiff's notice of intent fails to satisfy § 2912b(4)(a). Contrary to the majority, *ante* at 23 n 29, summarily naming "Huron Valley Radiology PC as well as the three individual physicians and 'their employees or agents, actual or ostensible, thereof'" in the notice of intent does not indicate what the "factual basis for the claim" is. Because I believe that the notice of intent does not satisfy the requirements set forth in § 2912b(4)(a) and (b), there is no need to address whether the notice of intent satisfies the other requirements of § 2912b(4), and the only reason that I even address § 2912b(4)(a) is to respond to the majority's incorrect conclusion that § 2912b(4) does not "require[] a claimant to set forth the nature of the relationship between the parties to be sued." *Ante* at 22.

[10] The Legislature has since amended § 5856. However, because plaintiff's complaint was filed (on November 4, 2003) before the effective date of this

16

In *Roberts I*, 466 Mich at 59, this Court held that "the statute of limitations cannot be tolled under MCL 600.5856(d) unless notice is given in compliance with all the provisions of MCL 600.2912b."[11]  As *Roberts I*, 466 Mich at 64, explained, "Section 5856(d) clearly provides that notice must be compliant with § 2912b . . . ."  "As a result, the tolling of the statute of limitations is available to a plaintiff only if all the requirements included in § 2912b are met."  Section 2912b(4) states that the notice of intent "*shall* contain a statement of at least *all* of the following . . . ." (Emphasis added.)  The term "shall" "denote[s] a mandatory, rather than discretionary action."  *Roberts I*, 466 Mich at 65.  The term "all" exemplifies that each and every one of the statements required by § 2912b(4)(a) through (f) must be contained in the notice of intent.  Therefore, only a notice of intent that is "in compliance with section 2912b" tolls the statute of limitations and a notice of intent must contain all of the statements required by § 2912b(a) through (f) in order to be "in compliance with section 2912b."

---

amendment (April 22, 2004), it has no effect on the instant case.  See 2004 PA 87, enacting section 1(1) ("this amendatory act applies to civil actions filed on or after the effective date of this amendatory act").  For a discussion of the amended version of § 5856, see *Bush v Shabahang*, 484 Mich ___; ___ NW2d ___ (2009) (Markman, J., dissenting), decided July 29, 2009 (Docket Nos. 136617, 136653, and 136983).

[11] This portion of *Roberts I* was decided unanimously with even the dissenting justices agreeing that "to begin the tolling of the . . . statute of limitations, a plaintiff must fully comply with the requirements of MCL 600.2912b.  Compliance with the delivery provision of the notice statute alone is insufficient."  *Roberts I*, 466 Mich at 72 (Kelly, J., dissenting).

Because, as discussed earlier, the notice of intent in this case does not contain the statements required by § 2912b(4)(a) and (b) with regard to HVR, it is not "in compliance with section 2912b." Because the notice of intent is not "in compliance with section 2912b," the notice of intent does not toll the statute of limitations. And because the period of limitations in a medical malpractice action is two years, MCL 600.5805(6), and the alleged malpractice in this case occurred on June 7, 2001, and the complaint was not filed until November 4, 2003, the complaint was untimely filed, and the action against HVR is barred by the statute of limitations. Therefore, the action against HVR should be dismissed with prejudice.

The Court of Appeals relied on *Kirkaldy v Rim*, 478 Mich 581; 734 NW2d 201 (2007), to support its conclusion that a defective notice of intent tolls the statute of limitations, and thus a dismissal without prejudice is appropriate. However, this case is significantly distinguishable from *Kirkaldy*. In *Kirkaldy*, 478 Mich at 586, this Court held that the filing of a complaint and a defective affidavit of merit tolls the statute of limitations until the affidavit of merit is successfully challenged. This is so because nothing in MCL 600.5856(a), which provides for tolling upon the filing of a complaint,[12] or MCL 600.2912d, which

---

[12] The amended version of MCL 600.5856 provides, in pertinent part:

> The statutes of limitations or repose are tolled in any of the following circumstances:

18

requires an affidavit of merit to be filed with a complaint,[13] limits tolling to an affidavit that is in compliance with § 2912d. However, § 5856(d) *does* limit tolling to a notice of intent that is "in compliance with section 2912b." Therefore, while the filing of a complaint and a defective affidavit of merit may toll the statute of limitations, the serving of a defective notice of intent does not.

Justice Young contends that the statute of limitations was tolled with regard to HVR because, although the notice of intent was insufficient as to HVR, it was sufficient as to defendant Murry. That is, he concludes that as long as a notice of intent is sufficient as to *one* of the defendants, the statute of limitations is tolled as to *all* of the defendants. I respectfully disagree.

As discussed above, § 5856 provided at the time of the filing of the complaint, in pertinent part:

> The statutes of limitations or repose are tolled:

> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

[13] MCL 600.2912d(1) provides, in pertinent part:

> [T]he plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169]. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following . . . .

* * *

> (d) If during the *applicable notice period under section 2912b*, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the *applicable notice period* after the date *notice is given in compliance with section 2912b*. [Emphasis added.]

Justice Young is correct that § 5856 does indicate that "more than one statute of limitations can be tolled . . . ." *Ante* at 14. For example, if multiple defendants receive a notice of intent that is sufficient as to all of them, all of their statutes of limitations are tolled. However, this does not mean that "more than one statute of limitations" is *always* tolled. Obviously, if there is only one defendant, only one statute of limitations would be tolled, and such a conclusion is not contrary to the reference in § 5856 to the "statutes of limitations." See MCL 8.3b, which provides that "every word importing the plural number may be applied and limited to the singular number." Similarly, concluding that a notice of intent only tolls the statute of limitations that applies to the defendant who has actually received a sufficient notice of intent, but not the statute of limitations that applies to the defendant who has *not* received such a notice, is also not inconsistent with the reference in § 5856 to the "statutes of limitations." Further, such a conclusion is required by the reference in § 5856(d) to "the applicable notice period under section 2912b," and "the applicable notice period after the date notice is given in compliance with section 2912b," because there is no "applicable notice period under section 2912b," if the notice of intent is not "in compliance with section 2912b."

20

As discussed earlier, § 2912b states, in pertinent part:

> (1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.
>
> * * *
>
> (4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following . . . .

Accordingly, as this Court held in *Roberts I*, 466 Mich at 64, a notice of intent only tolls the statute of limitations if the notice contains *all* the statements required by § 2912b(4). In addition, as this Court held in *Roberts II*, 470 Mich at 692, the notice of intent must contain all of the statements required by § 2912b(4) as to "*each* particular [defendant] named in the notice." (Emphasis added.) That is, the notice of intent only tolls the statute of limitations as to each particular defendant if the notice contains all the statements required by § 2912b(4) as to each particular defendant. Thus, if a notice of intent contains all the required statements as to the defendant physician, but does not contain all the required statements as to the defendant professional corporation, the statute of limitations would only be tolled as to the defendant physician because a notice "in compliance with section 2912b" has not been served on the defendant professional corporation and thus there is no "applicable notice period" as to the defendant professional corporation.

21

Contrary to Justice Young's contention, § 5856(d)'s reference to "a claim" does not alter the outcome.[14] The language "a claim" must be read in context. To *which* "claim" is § 5856(d) referring? When § 5856(d) is read in its entirety, it is clear that the "claim" to which it is referring is the "claim" that "would be barred by the statute of limitations" "during the applicable notice period under section 2912b." However, "a claim" would not be "barred by the statute of limitations" "during the applicable notice period under section 2912b" where a sufficient notice of intent had not yet been served upon the defendant. Where a sufficient notice of intent had not yet been served upon the defendant, there would be no "applicable notice period under section 2912b" and, thus, there would be no claim

---

[14] Although Justice Young relies on the language "a claim," this same language is found in the amended version of § 5856, and yet he recognizes that, under the amended version, the notice of intent has to be sufficient as to all the defendants in order to toll all their statutes of limitations. See *ante* at 15-17. In light of his view that a professional corporation that is not a "health facility" is not entitled to a notice of intent, combined with his view that the amended version of § 5856 only tolls the statute of limitations if the defendant has received a sufficient notice of intent, Justice Young apparently would conclude that a notice of intent that is sufficient as to the defendant physician would toll the statute of limitations as to the defendant physician, but would not toll the statute of limitations as to the defendant professional corporation. Under this view, a plaintiff would have to serve the defendant physician with a notice of intent and wait 182 days to file suit against the defendant physician, but the plaintiff would have to go ahead and file suit against the defendant professional corporation before the period of limitations expired as to that corporation since the corporation would not be entitled to notice of intent tolling. Therefore, the plaintiff would have to file his medical malpractice action against the professional corporation before he filed a medical malpractice action against the physician, if the period of limitations would have expired within 182 days after the plaintiff served his notice of intent on the physician.

22

that would be "barred by the statute of limitations" "during the applicable notice period."[15] Because I believe that "a claim" in § 5856(d) is referring to "a claim" that would be "barred by the statute of limitations" "during the applicable notice period," and the claim against HVR would not have been "barred by the statute of limitations" "during the applicable notice period" (because there was no "applicable notice period"), I conclude that the statute of limitations was not tolled as to plaintiff's claim against HVR.[16]

Moreover, under Justice Young's analysis, although HVR is not even entitled to a notice of intent because it is a professional corporation, he would hold that under § 5856(d) a notice of intent that does not comply with § 2912b tolls the statute of limitations applicable to HVR. That is, he concludes that, although HVR is not entitled to a notice of intent, plaintiff still gets the benefit of notice of

---

[15] For further discussion of this point, see my dissenting opinion in *Bush*, *supra* at 10.

[16] Justice Young concludes that "there is no textual basis for restricting tolling to a single claim." *Ante* at 15. However, under his interpretation, there would also seem to be no basis to limit tolling to only those claims relating to the plaintiff's medical malpractice action. In other words, the statutes of limitations for *all* claims against *all* defendants in Michigan would seem to be tolled as long as one plaintiff files a proper notice of intent with one defendant. This could hardly have been the intent of the Legislature. Contrary to Justice Young's contention, *ante* at 15 n 24, there *is* a "textual basis for treating subsection (d) of the tolling statute different than subsection (a) through (c) of the tolling statute." That is, as discussed above, subsection (d), unlike subsections (a) through (c), limits tolling to "a claim [that] would be barred by the statute of limitations" "during the applicable notice period" if it were not for the "notice [that] is given in compliance with section 2912b."

23

intent tolling. This conclusion, in which the defendant is denied the benefit of a notice of intent, and yet the plaintiff is afforded the benefit of an extended period of limitations, is illogical and inconsistent with the statute.[17] The whole reason for providing a plaintiff with notice of intent tolling is to compensate for the fact that he or she must file a notice of intent 182 days before filing a complaint. If, however, a plaintiff does not have to file a notice of intent and then wait 182 days before filing a complaint, why should the plaintiff be afforded 182 more days in which to file the complaint?

Justice Young observes that the "majority's analysis threatens to render the statutory notice procedure nugatory and undermines, if not overrules, this Court's precedent," *ante* at 2-3, and that it "threatens to deprive a named defendant of the notice that the statutory procedure is designed to provide," *ante* at 23. Although I agree with these observations, I believe that the same possibly can be said of Justice Young's own analysis.[18] He concludes that a notice of intent that is

----

[17] For the same reason that a notice of intent that does not comply with § 2912b does not toll the statute of limitations, a notice of intent that is not required by § 2912b does not toll the statute of limitations. That is, if a plaintiff serves a defendant with a notice of intent that is not required by § 2912b, notice is not "given in compliance with section 2912b," the plaintiff does not have to wait 182 days to file his or her complaint, i.e., there is no "applicable notice period under section 2912b," and thus notice of intent tolling under § 5856(d) is not applicable.

[18] The saving grace of Justice Young's analysis with regard to tolling is that it apparently would only apply to the former version of § 5856 that is at issue, not to the amended version that is applicable to all actions filed after April 22, 2004. See *ante* at 16-17.

sufficient as to one defendant tolls the statute of limitations for all the defendants, regardless of how defective the notice of intent is as to these other defendants or whether these other defendants were even entitled to a notice of intent in the first place. That is, although § 2912b(4) and *Roberts II* clearly require the plaintiff to provide all defendants with a notice of intent that is sufficient as to each, and although § 5856(d) and *Roberts I* clearly limit tolling to notices that are "given in compliance with section 2912b," Justice Young concludes that a notice of intent that is clearly not "in compliance with section 2912b" as to multiple defendants nevertheless tolls the statute of limitations as to these defendants as long as at least one defendant is given a notice of intent that is "in compliance with section 2912b." How are *other* defendants to receive the "notice that the statutory procedure is designed to provide"?[19]

---

[19] Justice Young contends that "a plaintiff's failure to provide a defendant with a sufficient NOI still entitles that defendant to dismissal, tolling notwithstanding." *Ante* at 16 n 25. However, this interpretation would seem to create a trap for unwary plaintiffs because MCL 600.2912b(6) prohibits the "tacking or addition of successive 182-day periods . . . ." As this Court explained in *Mayberry v Gen Orthopedics, PC*, 474 Mich 1, 3; 704 NW2d 69 (2005), "Section 2912b(6) prohibits a plaintiff from giving presuit notice to a defendant multiple times in order to initiate multiple tolling periods that repeatedly extend the period of limitations." Accordingly, if a notice that was filed within 182 days before the period of limitations would have expired and that is sufficient as to the defendant physician but defective as to the defendant hospital tolls the statute of limitations as to both, and § 2912b requires dismissal as to the hospital (as a result of the defective notice), the plaintiff's next notice sent to the hospital would not toll the statute of limitations (as a result of § 2912b(6)), and thus the plaintiff's action against the hospital would then be barred by the statute of limitations (since there would be no way for the plaintiff to file a sufficient notice and then wait 182 days to file suit against the hospital without the benefit of *another* 182-day tolling

25

## D. Retroactive Amendments

Although the majority does not address this issue because it concludes that the notice of intent is sufficient, in *Bush v Shabahang*, 484 Mich ___ n 45; ___ NW2d ___ (2009), decided July 29, 2009 (Docket Nos. 136617, 136653, and 136983), the majority concludes that, pursuant to MCL 600.2301, a plaintiff can simply amend a defective notice of intent and such amendment will "relate back to the time that the original NOI was mailed" or the courts alternatively can simply "disregard any error or defect" in the notice of intent. I respectfully disagree. See *Bush*, 484 Mich at ___, slip op at 12-13. MCL 600.2301 provides:

> The court in which any action or proceeding is *pending*, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties. [Emphasis added.]

period). That is, what Justice Young gives with one hand (defective notice tolls), he takes away with the other hand (defective notice requires dismissal and plaintiff cannot refile). Assuming that Justice Young's response to this conundrum is that the original complaint tolls the statute of limitations applicable to the hospital, under § 5856(a) (although the complaint has been dismissed against the hospital), he would then create a situation in which a plaintiff would have absolutely no incentive to file a notice that complies with § 2912b as to the hospital or any other defendant as long as he files a notice that complies with § 2912b as to one defendant, because the statute of limitations would presumably be tolled indefinitely by the complaint that has not been dismissed. The plaintiff would then apparently have an unlimited period of time in which to file a sufficient notice and to refile the complaint against the remaining defendants (or at least until all the claims were dismissed or otherwise adjudicated).

26

As this Court explained in *Boodt*, 481 Mich at 563 n 4, "§ 2301 only applies to pending actions."  As discussed above, § 2912b(1) provides, "a person *shall not commence an action* alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." (Emphasis added.)  Section 2912b(4) states that the "notice given to a health professional or health facility under this section *shall contain* a statement of at least *all* of the following . . . ."  (Emphasis added.)  Therefore, as we explained in *Boodt*, 481 Mich at 562-563, "a plaintiff cannot commence an action before he or she files a notice of intent that contains all the information required under § 2912b(4)."[20]  Because plaintiff's notice of intent here did not contain all the information required under § 2912b(4) as to HVR, plaintiff could not have commenced a medical malpractice action against HVR.[21]  Therefore, § 2301 is inapplicable, and plaintiff cannot retroactively amend the notice of intent and the courts cannot "disregard any error or defect" in the notice of intent.

---

[20] For further discussion of *Boodt*, see my dissenting opinion in *Bush*, *supra* at 13, 17-18.

[21] In *Bush*, *supra* at 14 n 26, the majority mischaracterizes *Boodt* as holding that "because no tolling was afforded in the presence of a defect pursuant to § 5856(d), the plaintiff's action was not commenced under § 2912b(1)."  However, it was not the lack of tolling that prevented the plaintiff's action from commencing, it was the lack of a notice of intent in compliance with § 2912b.  See § 2912b(1) and (4) ("a person shall not commence an action alleging medical malpractice . . . unless the person has given . . . written notice . . . [that] contain[s] a statement of at least all of the following . . . .").

E. Majority Procedures

As noted in n 1 of this opinion, the majority addresses issues that are not even properly before it. In Docket No. 136336, plaintiff appealed the portion of the Court of Appeals decision that held that the notice of intent was defective as to HVR, and in Docket Nos. 136338 and 136339, defendants appealed the portion of the decision that held that the defective notice of intent tolled the statute of limitations, and thus that a dismissal without prejudice was appropriate, and the portion that held that the notice of intent was sufficient as to defendant Murry. In Docket No. 136336, we granted plaintiff's application "*limited* to the issue whether defendant Huron Valley Radiology, P.C., is a 'health facility or agency' to which a plaintiff is required to provide notice under MCL 600.2912b(1)." 482 Mich 1004 (2008) (emphasis added). In Docket Nos. 136338 and 136339, we held defendants' application in abeyance for plaintiff's application. 756 NW2d 85 (2008). Subsequently, in Docket No. 136336, we directed the parties to file briefs addressing "whether, if a defendant professional corporation is not an entity to whom notice is required to be provided under MCL 600.2912b, the applicable statute of limitations, MCL 600.5805(6), was nonetheless subject to statutory tolling provided in former MCL 600.5856(d)." 483 Mich 922 (2009). However, we never asked the parties to address the sufficiency of the notice of intent as to either HVR or Murry. As a result, the parties did not, in fact, brief or argue these issues. See n 1 of this opinion.

28

Thus, despite the fact that the parties have not had an opportunity to brief or argue these issues, and, indeed, despite the fact that the issue regarding the sufficiency of the notice of intent as to defendant Murry has been formally *abeyed*, the majority nonetheless addresses these issues and implicitly overrules *Roberts II* in the process.[22] The majority implicitly overrules *Roberts II* by refusing to follow its holdings: (a) that a notice of intent must indicate whether the plaintiff is seeking to hold the defendant professional corporation vicariously or directly liable, and instead holding that as long as the plaintiff is only going to sue the defendant on the basis of vicarious liability it does not have to indicate this in the notice of intent; and (b) that a notice of intent must contain all the statements required by § 2912b(4), and instead holding that a notice of intent is sufficient as long as the defendant "could reasonably be held to comprehend the nature of the claims being asserted against it." *Ante* at 26. The majority does this without so much as a mention of stare decisis. What happened to the view that "[t]he Michigan Supreme Court should not alter the precedent . . . without first hearing oral argument and inviting briefing on it"? *Scott v State Farm Mut Auto Ins Co*,

---

[22] "The Court shall not issue any peremptory order unless it is signed by five Justices, except where a majority of Justices conclude that emergency circumstances warrant the issuance of such an order." Minutes of the Conference on Administrative Matters, Item 2, 2003-31, Internal Rules, July 24, 2003. The majority violates this rule by reversing the Court of Appeals on the issue of the sufficiency of the notice of intent as to defendant HVR without briefing or oral argument, and without the requisite five votes, because, although this issue was raised in plaintiff's application for leave to appeal, we granted leave to appeal only as to a different issue.

482 Mich 1074, 1076-1077 (2008) (Kelly, J., dissenting). What happened to the view that by "fail[ing] to comprehend how the skilled advocates in this case could have added anything insightful in the debate over the proper interpretation of . . . precedent . . . the majority undermines the foundations of our adversarial system"? *Mack v Detroit*, 467 Mich 186, 223; 649 NW2d 47 (2002) (Cavanagh, J., dissenting). Apparently, these views are only pertinent where precedents with which the majority agrees are at stake.[23]

---

[23] For further discussion on the subject of the majority and stare decisis see *Petersen v Magna Corp*, 484 Mich ___; ___ NW2d ___ (2009) (Markman, J., dissenting), decided July 31, 2009 (Docket Nos. 136542 and 136543), slip op at 43-51, and *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 223-247; 731 NW2d 41 (2007) (Markman, J., concurring). Increasingly, the same regard for precedent evidenced in this case towards *Roberts II* by the majority, see *supra* at 12-13, has been reflected toward other disfavored and inconvenient precedents: they are simply ignored. For illustrations of this phenomenon, see e.g., *Vanslembrouck v Halperin*, 483 Mich 965 (2009), in which the new majority ignored *Vega v Lakeland Hosps*, 479 Mich 243, 244; 736 NW2d 561 (2007); *Hardacre v Saginaw Vascular Services*, *PC*, 483 Mich 918 (2009), in which it failed to follow *Boodt*, 481 Mich 558; *Sazima v Shepherd Bar & Restaurant*, 483 Mich 924 (2009), in which it failed to follow *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606; 295 NW 331 (1940), and *Camburn v Northwest School Dist (After Remand)*, 459 Mich 471; 592 NW2d 46 (1999); *Juarez v Holbrook*, 483 Mich 970 (2009), in which it failed to follow *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008); *Beasley v Michigan*, 483 Mich 1025 (2009), in which the majority failed to follow *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; 731 NW2d 41 (2007); *Scott v State Farm Mut Auto Ins Co*, 483 Mich 1032 (2009), in which the majority failed to enforce *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986), and *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997) and *Chambers v Wayne Co Airport Auth*, 483 Mich 1081 (2009), in which the majority again failed to abide by *Rowland*.

Chief Justice Kelly contends that "the accusation that the Court has been ignoring precedent is incorrect." *Ante* at 5. As Justice Corrigan explained in

*Beasley*, 483 Mich at 1029-1030 (Corrigan, J., dissenting), in response to this same contention:

> Chief Justice Kelly attempts to explain away the new majority's actions by sharing her views regarding the prior caselaw that the new majority has otherwise chosen to ignore. But Chief Justice Kelly's interpretation of a prior case in a concurring statement is not a decision of the Court. More importantly, her argument overlooks the fundamental problem: the new majority's continuing failure to explain its apparent disregard of this Court's precedent undermines the predictability and stability of the rule of law.
>
> * * *
>
> [T]he new majority offers no articulable reasons whatsoever for its apparent detours from stare decisis. Instead, the majority declines to explain whether—and, if so, why—it is overruling precedent despite the obvious appearance that it is doing so. If it intends to alter legal principles embedded in this Court's decisions, then the new majority should explain its reasons clearly and intelligibly. Instead, the new majority overrules by indirection, or at least leaves the impression that it is doing so, thereby sowing the seeds of confusion and making it difficult for the citizens of this state to comprehend precisely what our caselaw requires. This appears to be an unfortunate return to our predecessors' past practice of "frequently pa[ying] little attention to the inconsistencies among its cases and declin[ing] to reduce confusion in [the Court's] jurisprudence by overruling conflicting decisions." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 571 n 19 (2005).

See also *Rowland*, 477 Mich at 226-227 (Markman, J., concurring), for further discussion of the penchant of some Justices to ignore inconvenient precedents, thereby "[leaving] intact precedents that were inconsistent with new decisions, essentially allowing future litigants to choose among inconsistent precedents as in columns A and B of a Chinese restaurant menu."

> In the end, there is no shortcut to resolving whether the majority or the dissenting Justices are correct in their characterizations of what the majority is doing. We can only identify what we believe to be the questionable decisions of the majority, identify the relevant precedents, and invite the reader to

31

To summarize my concerns with the majority opinion: (1) it addresses issues that have neither been brief nor argued; (2) it addresses an issue that was formally abeyed; (3) it violates one of this Court's internal rules by reversing the Court of Appeals on an issue that has neither been briefed nor argued, without the required five votes and in the absence of any emergency circumstances; (4) it concludes that HVR was entitled to a notice of intent simply because this is a medical malpractice action and because the words "professional corporation" can be found in § 5838a, without any discussion of whether HVR is either a "health professional or health facility" under § 2912b(1); (5) it concludes that the requirement of § 2912b(4)(a) that the notice of intent contain a statement of the "factual basis for the claim" does not require a statement indicating that the reason that the defendant professional corporation is being sued is because the defendant physician was working at the corporation at the time of the alleged malpractice; (6) it concludes that the requirement of § 2912b(4)(b) that the notice of intent contain a statement of the "applicable standard of practice or care" does not require a statement indicating whether the plaintiff is seeking to hold the defendant professional corporation directly or vicariously liable; (7) it relies upon a distinction without any difference to conclude that *Roberts II* is not dispositive; (8) it questions whether *Roberts II* was correctly decided with regard to whether a

> reach his or her own conclusions. [*Petersen*, *supra* at 47 n 47 (Markman, J. dissenting).]

notice of intent must be particularized, leaving the bench and bar at a loss as to whether *Roberts II* remains good law on this issue; and (9) it implicitly overrules *Roberts II*'s holding that a notice of intent must indicate whether the plaintiff is seeking to hold the defendant professional corporation vicariously or directly liable and its holding that a notice of intent must contain all of the statements required by § 2912b(4), without any mention whatsoever of stare decisis.

## IV. CONCLUSION

Although the notice of intent was sufficient as to defendant Murry, it was insufficient as to defendant HVR. As this Court held in *Roberts I*, a defective notice of intent does not toll the statute of limitations. Because the complaint was filed more than two years after the alleged malpractice occurred, the action against HVR is time-barred. Accordingly, I would affirm the portions of the Court of Appeals opinion that held that the notice of intent was sufficient as to defendant Murry and insufficient as to defendant HVR, but reverse the portions that held that the defective notice of intent tolled the statute of limitations and thus that a dismissal without prejudice was appropriate. The action against HVR should be dismissed with prejudice.


Stephen J. Markman

33